235 A.2d 91.

CATHERINE K. ROWELL *vs.* JACOB KAPLAN *et al.*

NOVEMBER 6, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This bill in equity was commenced prior to the January 10, 1966 effective date of the superior court's new rules of civil procedure and subsequent to that date was tried on its merits to a justice of that court sitting without a jury. The case, although commenced as a bill in equity, was heard on a complaint which had been amended in an attempt to make it conform to the new rules. At the conclusion of the presentation of the plaintiff's evidence, the defendants, without either resting or waiving their right to offer evidence in the event their motion was denied, jointly moved that the complaint be dismissed and that a judg-

ment on the merits be entered in their favor. That motion was granted, and the case is now here on the plaintiff's appeal from the judgment which thereupon entered for the defendants.

The litigation centers about plaintiff's seven-acre tract of real estate which has a dwelling situated thereon and is located in the city of Warwick, Kent county. The only evidence as to its worth came from a real estate expert who testified that its fair market value was $40,000. In August of 1964, the mortgages on the property were in default, foreclosure was being threatened, the property was under attachment, unpaid creditors were pressing for payment, and plaintiff was otherwise in financial difficulties. When her attempt to obtain conventional refinancing through local banking institutions proved unsuccessful, she somehow came in contact with defendant Jacob Kaplan, hereinafter called Kaplan and to be distinguished from his wife Isabella R. Kaplan, also a defendant. She was referred by Kaplan to Northeast Capital Corporation, a small business investment corporation, and she applied to that company for a loan of $30,000. Her negotiations there were with Arnold Kilberg who, in addition to being an officer of that company, was Kaplan's auditor. Northeast agreed to refinance with a mortgage loan of approximately $22,000 provided Kaplan would guarantee the obligation. He consented, but conditioned his consent upon plaintiff's agreeing to convey a one-half interest in her property to his wife, defendant Isabella R. Kaplan. The plaintiff, while acceding to that demand, testified that their agreement also contemplated that the one-half interest in her property would be reconveyed to her upon payment of the loan.

Effectuation of the foregoing arrangements took place at the office of a local title company on November 25, 1964, at which plaintiff was represented by competent counsel. While plaintiff received only $22,608.70 from Northeast,

her mortgage note was in the face amount of $26,000. It was payable in equal monthly installments of $618.54 each commencing on December 25, 1965, and continuing monthly thereafter until paid in full. The difference between what was received and the face amount of the note represents one year's interest, in advance, computed at the rate of one and one quarter per cent per month on the principal sum as well as interest at the same rate on the unpaid installment balances. In addition and in furtherance of the earlier arrangements, plaintiff mortgaged her property to Northeast, and Kaplan guaranteed the payment of the Northeast note. A deed was also executed by which plaintiff conveyed an undivided one-half interest in her property to Isabella R. Kaplan. There were no documentary stamps affixed and it contained the following recital: "The nature of and consideration for this conveyance are such that no revenue stamps are required." When it appeared that the advance from Northeast would be insufficient to discharge the indebtedness then due on plaintiff's property, defendant Jackson Land Company, a corporation controlled by Kaplan, loaned plaintiff $1,000, which more than covered the deficiency. That loan was evidenced by plaintiff's promissory note. It was payable one year from date, carried interest at the rate of 6 per cent per year, and was secured by a second mortgage on her then interest as a tenant in common of her real estate.

In October of 1965, plaintiff advised Kaplan that she was ready to repay her loans and, relying on the alleged agreement with Kaplan, asked for a reconveyance of Mrs. Kaplan's interest in her property. When Kaplan refused, she consulted counsel. He advised all of the defendants by letter dated November 24, 1965, that arrangements had been made to pay the outstanding loans, requested advice as to the exact amounts due, and demanded a reconveyance from Mrs. Kaplan. That letter produced no results,

and plaintiff, by then fearful of a possible foreclosure, commenced this suit on December 10, 1965. On that date the note to Jackson was in default, and the first installment on the obligation to Northeast would fall due fifteen days hence. The theory upon which plaintiff proceeded both at trial and before us was that the substance of the transactions, rather than their form, should control. Those transactions, so viewed, she argues, evidence that defendants acted in concert, that Northeast and Jackson were Kaplan's alter egos whose identities were merged into his, and that he was the sole lender. Upon those factual premises, she bases her legal conclusion that the transactions were usurious and otherwise unconscionable. By way of relief she asks generally: for money damages for the alleged usury; for $23,608.70, that being the exact total of the sum advanced by Northeast and Jackson; for cancellation and rescission of the notes, mortgages and deed; and for an injunction restraining the respective defendants from foreclosing their respective mortgages or from transferring the notes securing same.

When defendants, at the conclusion of plaintiff's case, moved for an involuntary dismissal, the trial justice, in a bench decision, found that the bill "* * * was not originally brought in good faith," and that plaintiff had not established her theory that the identities of the several defendants had been merged with that of Kaplan. Upon those findings, he concluded that the action should be dismissed on its merits and the judgment[1] so provided.

---

[1]The judgment reads:

"1. That the Restraining Order previously issued against the Defendants is hereby dissolved.

"2. That the prayers of the Plaintiff are denied.

"3. That the notice of lis pendens filed by the Plaintiff in the Land Evidence Records, City of Warwick, is hereby discharged.

"4. That the complaint and the action is dismissed on the merits and the Defendants be entitled to recover from the Plaintiff their costs of action."

In her appeal plaintiff's arguments are addressed primarily to procedural rather than to substantive matters. Two of those arguments are (1) that the action was not ripe for dismissal because defendants' case had not been finally closed, and (2) that the action which concerned real estate should have been tried in Kent rather than in Providence county. While the first would be tenable if *Sundlun* v. *Volpe*,[2] 62 R. I. 55, 2 A.2d 875 (1938), were still the rule, that case was rendered nugatory originally by the enactment of P. L. 1951, chap. 2745 (later §9-14-22), and later by rule 41(b)(2) of the superior court rules of civil procedure. Both statute and rule in substance specifically permit a defendant in an action tried by the court without a jury to move for a dismissal on the merits at the conclusion of plaintiff's presentation of evidence without waiving his right to offer evidence in the event his motion is denied.

As authority for the second contention she relies on G. L. 1956, §§9-4-2 and 9-4-6, as amended. In substance, and insofar as pertinent to her position, they provide that an action concerning realty or any right or interest therein, shall be dismissed if not *brought* in the county where the land is located. This action, however, although tried in Providence county, was *brought* in *Kent* county, the situs of the land. Additionally the holding of the trial in Providence county gained validity under §8-2-27,[3] as amended, from a stipulation agreed to by all of the parties and approved by the judge, which provided that the "* * * Matter may be heard in Providence County on merits."

The plaintiff also argues that it was error for the trial

---

[2]The holding in *Sundlun* was that in equity a respondent is required to close his case before the cause is ready for a decision on the merits and entry of a final decree.

[3]That section reads: "Any civil cause or any question of law or fact therein, and any question of law in any criminal proceeding, may, by consent of the parties and with approval of the court, be tried and determined in any county. * * *"

justice to deny her request to frame issues for trial by a jury. The request, as we understand it, was for a jury as of right under rule 38; it was not for the advisory jury provided for by rule 39. In point of time, it was originally made when she filed her bill of complaint, and was repeated when she filed her amended complaint and again at the commencement of the hearing on the merits. Inasmuch as defendants have not brought the question into issue, we assume, although we do not decide, that at least one of these requests was timely as well as procedurally without fault.

The nature and extent of the right to a jury trial provided for in rule 38 become conceptually more clear if considered within the context of the principles underlying the rules. Under those principles, law and equity are united; the splitting of a cause into two actions, one for legal and the other for equitable relief is prohibited; the fusion of all claims, whether legal or equitable, or even both, into a single action is required; and the right to obtain all of the relief to which a party may be entitled in a single action is made possible.

It is within the context of these basic principles that we consider rule 38. It preserves inviolate the right of trial by jury as declared by the constitution and as given by statute, and it prescribes the procedures whereby such a trial may be had if the right to it exists, *Arnstein* v. *Twentieth Century Fox Film Corp.*, 3 F.R.D. 58, 59; it continues to a limited extent and in appropriate circumstances the difference between law and equity for the purpose of determining the right to a jury trial even though those differences are otherwise generally abolished by the rules, *Orenstein* v. *United States*, 191 F.2d 184, *Groome* v. *Steward*, 142 F.2d 756; it neither restricts nor enlarges the right to a jury trial as it previously existed, 5 Moore, Federal Practice (2d ed.) ¶38.07 [1], at 40; and it insures that issues which were formerly triable at law as of right to a jury are

still triable in that fashion, and that those which under pre-rules procedures were considered equitable shall be triable by the court. *Bynum* v. *Prudential Life Ins. Co.,* 7 F.R.D. 585; *Ettelson* v. *Metropolitan Life Ins. Co.,* 137 F.2d 62.

Whether the basic issues raised are legal or equitable, that is whether they were triable to a jury or to the court before the adoption of the rules, determines the nature of the trial. Moore, *supra,* ¶38.16 at 148 et seq. It is the test we apply in this case.

The complaint here sounds in both equity and law. The request for cancellation and rescission of the notes, mortgages and deed is basically equitable in nature and is therefore triable to the court and not to a jury. *Berberian* v. *Martin,* 100 R. I. 227, 214 A.2d 189; the claim for monetary damages on the other hand is traditionally legal and, if it is basic to the action, entitles plaintiff to a jury trial. That plaintiff merged her two claims in a single action in no way affects her right to a jury trial. *Dairy Queen, Inc.* v. *Wood,* 369 U. S. 469. Any other conclusion would be "* * * rationally unsound and practically undesirable * * *" and in addition would be "* * * contrary to that complete union * * *which the new rules not only permit, but encourage." *Ring* v. *Spina,* 166 F.2d 546, 550.

A claim for monetary damages which does not of itself create a basic legal issue, however, will not support a claim to a jury trial. Moore, *supra,* ¶38.19[2] at 169. This is such a case. Here, plaintiff, although she asks for money damages, nowhere alleges that she ever paid either principal or interest on the indebtedness created by the allegedly usurious transaction. Such a payment is a prerequisite to an action at law for usury under §6-26-4. Without it the action which the legislature provided for will not lie. *Nazarian* v. *Lincoln Finance Corp.,* 77 R. I. 497, 78 A.2d 7. The plaintiff's claim for monetary damages, therefore, raised no

basic legal issue, and for that reason gave her no right to a jury trial. In these circumstances, rule 38 did not require the trial justice to grant plaintiff's request to frame issues for trial by a jury.

We come now to the question of whether the trial justice complied with rule 52(a). Its requirement is that "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *." While the rule permits such findings and conclusions to be included in any "opinion or memorandum of decision" which may be filed, the better practice, and the one customarily followed in the federal courts, is that they also be set out specifically in the judgment.

The purposes of the rule are threefold. Moore, *supra*, ¶52.06[1] at 2653. They are to insure that the reviewing court will obtain a clear understanding of what was the trial court's judgment; to make definite and certain what has and what has not been decided and thereby to obviate in substantial measure future doubts or questions as to when and in what circumstances the doctrines of estoppel by judgment or res adjudicata will apply; and to furnish assistance to the trial justice in reaching a correct appraisal of the evidence. Of this final purpose, Judge Jerome Frank in the frequently cited case of *United States* v. *Forness,* 125 F.2d 928, said at 942:

"It is sometimes said that the requirement that the trial judge file findings of fact is for the convenience of the upper courts. While it does serve that end, it has a far more important purpose — that of evoking care on the part of the trial judge in ascertaining the facts. For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper. The

trial court is the most important agency of the judicial branch of the government precisely because on it rests the responsibility of ascertaining the facts."

As construed in the federal courts the obligations under rule 52(a) of the federal rules, while mandatory and demanding a fair observance, are not jurisdictional. *Huard-Steinheiser, Inc.* v. *Henry,* 280 F.2d 79; *Kweskin* v. *Finkelstein,* 223 F.2d 677; *Rossiter* v. *Vogel,* 148 F.2d 292; *Hurwitz* v. *Hurwitz,* 136 F.2d 796. Such a construction differs in degree from that given in this state to the somewhat similar requirement of §28-35-27. That section provides that decrees in workmen's compensation controversies shall "contain findings of fact," and we have said that a failure to comply renders the decree "a nullity." *Dodge* v. *Barstow Stove Co.,* 40 R. I. 191, 100 A. 245.[4] Because the expeditious disposition of litigation is obviously preferable to an insistence upon formalisms, we adopt the view of the federal courts and we will not in every instance insist upon strict compliance with the fact-finding requirements of rule 52(a).

That conclusion is not without its limitations. We cannot be kept in the dark when we review, and noncompliance with the rule will entail the risk of reversal or remand unless the record will yield a full understanding and resolution of the controlling and essential factual and legal issues. *Welsh Co. of California* v. *Strolee of California, Inc.,* 290 F.2d 509; *Graham* v. *United States,* 243 F.2d 919; *Irish* v. *United States,* 225 F.2d 3.

In this case the strict demands of the rule were not satisfied. The judgment contained neither factual determinations

---

[4]The strict requirement in *Dodge* was somewhat relaxed in *Turner Construction Co.* v. *Simone,* 51 R. I. 210, 153 A. 364. In that case, notwithstanding that the record contained sufficient evidence on the single issue before the court to support its decision, the decree which was entered failed to include any findings of fact. While the court sustained the appeal, it did so only as to form, and in order to insure that the record would be clear, it remanded with direction to amend the earlier decree by adding the appropriate findings of fact.

nor legal conclusions, and neither an opinion nor a memorandum decision was filed. The trial justice in his bench decision found, however, that the bill was not "originally brought in good faith" and that Kaplan had no financial interest in Northeast. While those findings are abbreviated, and indeed minimal, the rule does not demand discursive statements or an extensive analysis of the evidence. Findings, even though brief, will suffice if they are definite and pertinent, cover the factual issues which have relevance to the controlling legal questions, and dispose of the contested issues. 5 Moore, *supra*, ¶52.06[1] at 2656; *Life Savers Corp.* v. *Curtiss Candy Co.*, 182 F.2d 4.

On this subject the supreme court said in *Kelley* v. *Everglades Drainage District,* 63 S.Ct. 1141, 1145, 319 U. S. 415, 422:

> "* * * Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others; the nature of the evidentiary findings sufficient and appropriate to support the court's decision as to fairness or unfairness is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion."

In summation, the findings should be "* * * clear, specific and complete without unrealistic and uninformative generality on the one hand, and on the other without an unnecessary and unhelpful recital of nonessential details of evidence." 2B Barron & Holtzoff, Federal Practice & Procedure, §1127, p. 503.

Here the finding that plaintiff did not act in good faith was obviously grounded upon evidence that she had no available funds with which to pay defendants what was owed and that she could not, therefore, meet the good

faith requirement which *St. Germain* v. *Lapp*, 72 R. I. 42, 48 A.2d 181, makes a precedent to an action for the cancellation and rescission of an usurious agreement. Additionally, the further finding that Kaplan had no financial interest in Northeast destroyed the foundation upon which plaintiff's theory of the case rested. These findings, therefore, meet the tests, and in these circumstances we will overlook the trial justice's failure to comply strictly with the rule.

Accepting arguendo that the requirements of rule 52(a) were met, plaintiff argues nonetheless that the trial justice could have reached his factual conclusions only by resolving all doubts as to credibility against her and by drawing from the evidence inferences which were unfavorable to her. She says that the application of such a standard was error, and that the trial justice should instead have followed the same guides which prevailed under our equity practice on a motion for an involuntary dismissal and which are observed in a jury case on a motion for a directed verdict. Under that standard the trial justice would have been duty-bound to consider all the evidence and all the inferences reasonably deducible therefrom most favorably to plaintiff, and the motion for a dismissal could have been granted only if, as a matter of law, on the evidence so viewed, she would not have been entitled to recover. *Flynn* v. *Byrne*, 82 R. I. 48, 105 A.2d 800 (equity); *Gramolini* v. *Marzalkowski*, 102 R. I. 85, 228 A.2d 537 (directed verdict).

The plaintiff's position ignores the new rules. On a motion for involuntary dismissal under rule 41(b)(2) the standard as it formerly existed under our equity practice no longer controls. That rule says "The court as trier of facts may then determine them [the facts] and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." That language makes the judge the trier of the facts, it empowers him to weigh and

consider the evidence, and it permits him to grant a defendant's motion for an involuntary dismissal, even though in a jury case the state of the evidence would be such as to preclude a directed verdict. Moreover, when he engages in the inferential process, he is under no obligation, as he would be if the motion were one to direct, to draw all reasonable inferences against the moving party. In short, he looks at the evidence in no different light from the way he would have looked at it if both plaintiff and defendant in a non-jury case had each concluded their cases.[5] 2B Barron & Holtzoff, *supra,* §919, at 149; *Allred* v. *Sasser,* 170 F.2d 233.

Finally, and in order that we not be construed as establishing a procedure which interferes with or unduly delays the orderly and prompt disposition of cases on already overcrowded dockets, we make clear that we do not anticipate that the trial justice will himself prepare a judgment containing the prerequisite fact findings in every action he hears. Instead, it is expected that he will call upon the prevailing party or even both parties to submit proposed findings of fact and legal conclusions. *Dearborn National Cas-*

[5]During the last term of court we decided *Milliken* v. *Milliken,* 101 R. I. 572, 225 A.2d 661. Because divorce follows the course of equity, we held under *Flynn* v. *Byrne, supra,* that the question of a petitioner's credibility was not before a justice of the family court on a motion to dismiss made in a divorce case by a respondent who had not rested. Stare decisis and respect for long standing practices dictated that conclusion. Today's eradication of the *Flynn* v. *Byrne* doctrine in the superior court gives rise to the anomaly of having one standard in that court and another in the family court. Such a situation is not in the best interests of the public. Absent some sound reason for a difference, it is obviously advantageous that the rules of practice in our various trial courts shall be consistent. In our judgment the standard established by rule 41 (b) (2) is procedurally superior to the rule in *Flynn* v. *Byrne.* We overrule *Milliken* v. *Milliken, supra,* and under our supervisory power over the courts of this state direct that the 41 (b) (2) standard shall, until changed as provided by law, apply in the family court on a motion for an involuntary dismissal in domestic relations matters.

*ualty Co.* v. *Consumers Petroleum Co.,* 164 F.2d 332; *Schilling* v. *Schwitzer-Cummins Co.,* 142 F.2d 82. Such a practice is customarily followed in the federal courts. It is consistent with the procedure we formerly followed in equity matters, wherein counsel for a successful party usually prepared the decree and prior to its entry presented it to opposing counsel for examination. *Leary* v. *Leary,* 87 R. I. 189, 193, 139 A.2d 472, 474.

For the reasons indicated, the plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Pat Nero, Thomas W. Pearlman,* for plaintiff.

*Ernest L. Shein* (Attorney for Isabelle R. Kaplan, Jacob Kaplan, Jackson Land Company), *James E. Murphy,* (Attorney for Northeast Capital Corporation), for defendants.