385 A.2d 663.

RUDOLPH F. FRYZEL *et ux. v.*
DOMESTIC CREDIT CORPORATION.

APRIL 24, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

Doris, J.   This is a civil action brought as the result of a dispute over the amount due on a promissory note. The cause was heard by a justice of the Superior Court, sitting without a jury, who found for the plaintiffs. The defendant now appeals from that judgment.

The plaintiffs, Rudolf F. and Ruth E. Fryzel, entered into an agreement for a real estate loan of $77,000 with defendant Domestic Credit Corporation on May 25, 1973. The loan was secured by mortgages on real estate owned by plaintiffs. Repayment was to be made within six months, with the final payment due on November 25, 1973, in accordance with a promissory note signed by plaintiffs.

The promissory note provided, *inter alia,* "lender agrees to extend maturity for 6 months at borrowers option, providing account is current." The note also included the following statement under a section entitled "Late Charges and Default Terms"

> "(a) Rhode Island transaction * * *, payments accepted eleven (11) days after due date shall bear a delinquency charge of five (5%) percent of the overdue payment; a payment accepted one (1) month or more after date due shall, at the option of the lender, extend the maturity of the loan by the number of months unpaid. The charge for extending the term shall be one (1%) percent of the gross balance then due for each month extended."

The plaintiffs exercised the six-month option. Following the completion of this option period, a second unexplained six-month period elapsed. On October 29, 1974, the parties signed a modification agreement for the outstanding balance due on the original note, $48,652.16. This modification

agreement also provided for a six-month repayment period, with monthly payments of $610. The unpaid balance was due on the date of the final payment, April 29, 1975.

The face of the modification agreement recited the terms of the original loan on the left side. The six-month extension option was included; however, the provision for late charges and default terms was omitted. The right side of the agreement stated the terms of the loan, as modified. No mention of either an extension option or late charges was made in this column. The following language was also included at the bottom of the page in capital letters: "This modification agreement and disclosure statement continues on the reverse side hereof." The reverse side of the note stated, *inter alia:*

> "NOW, THEREFORE, the parties agree that the loan transaction shall be modified as described in BASIC TERMS OF LOAN AS MODIFIED on the reverse side hereof, and Lender shall forebear to bring suit or exercise its security rights for collection of the note so long as Borrower(s) shall comply with the terms of said note and security documents as herein modified *(except as modified herein, said note is hereby confirmed* and no rights of Lender therein or in the security documents shall be deemed waived except as expressly stated herein.).'' (Emphasis added.)

The evidence shows that plaintiffs made regular payments pursuant to the modified note for five months. However, when the balance became due on April 29, 1975, plaintiffs did not pay the entire balance. In May, defendant began imposing a one percent per month penalty on the unpaid balance pursuant to the late charges and default provisions of the original promissory note.

The plaintiffs received bills from defendant in May ($610), June ($223.10) and July ($610), and they continued making payments. The plaintiffs also made an additional payment of $17,000 in May.

On August 22, 1975, plaintiffs tendered payment of $21,290.09 to defendant, asserting that this amount was the amount due on the balance of the loan. The defendant refused to accept payment, contending that the loan was in default and that plaintiffs owed substantially more than the amount tendered.

The plaintiffs then began this action in Superior Court, seeking, *inter alia,* that (1) they be allowed to pay $21,290.09 to the Registry of the Superior Court; (2) the court enjoin defendant from accruing interest on the $21,209.09 from and after August 22, 1975; and (3) the court appoint a master to compute the balance owed to defendant on August 22, 1975.

On October 14, 1975, defendant received a check from plaintiffs for $21,290.09 pursuant to an order of a Superior Court justice. One week later, defendant filed a counterclaim for the difference between the amount defendant claimed was due ($26,384.14 on October 14, 1975) and the $21,290.09 paid by plaintiffs. The defendant again asserted its belief that the loan was in default.

A trial was held on defendant's counterclaim, with the decision on plaintiffs' complaint being determined according to the decision rendered on the counterclaim.

The only witness presented by defendant was Nathaniel B. Baker, President of Domestic Credit Corporation. Baker testified that the modification agreement matured on April 29, 1975. Following that date, defendant began to impose the "extension fee" of one percent of the unpaid balance as outlined in the original promissory note. Baker testified that defendant believed the provision in the original note for late charges and default terms, under which defendant was authorized to charge the one percent extension fee, was carried over into the modification agreement. He further testified that plaintiffs were not entitled to a six-month extension in the modification agreement because that option had already been exercised in the original agreement.

At the close of Baker's testimony, plaintiffs moved to dismiss defendant's counterclaim. That motion was granted by the trial justice, who found that the language of the modification agreement "confirm[ing]" the original note was ambiguous. The trial justice therefore construed the clause against defendant and gave two reasons for granting the motion to dismiss the counterclaim.

First, the trial justice ruled that the extension fees could be assessed only if the section of the original promissory note allowing late charges and default terms was incorporated by reference into the modification agreement. It was his opinion that the clause was not so incorporated. Second, the trial justice ruled that if the terms of the original note were incorporated by reference into the modification agreement, the six-month extension provision was also incorporated; and plaintiffs were never in default because they tendered the unpaid balance to defendant within six months of the due date of the modification agreement.

Before proceeding to the merits of this dispute, we point out again, as we have done in numerous cases, that Super. R. Civ. P. 41(b)(2) and 52(a) require the trial justice to make specific findings of fact and conclusions of law whenever he grants a motion to dismiss. Noncompliance with these rules entails the risk of reversal or remand unless the record discloses sufficient facts to allow us to understand the basis for the trial justice's decision. *American Ins. Co.* v. *Aetna Life Ins. Co.*, 116 R.I. 518, 359 A.2d 37 (1976); *S.M.S. Sales Co.* v. *New England Motor Freight, Inc.*, 112 R.I. 366, 310 A.2d 141 (1973); *Andoscia* v. *Douglas*, 107 R.I. 199, 266 A.2d 55 (1970); *Rowell* v. *Kaplan*, 103 R.I. 60, 235 A.2d 91 (1967).

The record before us contains no written decision by the trial justice, and the judgment entered is barren of any findings of fact and conclusions of law. The oral decision rendered by the trial justice likewise does not specifically enumerate the findings of fact upon which the trial justice

based his legal decision. We shall, however, proceed to the merits of this case because the oral decision of the trial justice, although abbreviated, will suffice to allow us to fully understand and resolve the essential factual and legal issues involved in this case. *Rowell* v. *Kaplan, supra* at 69-74, 235 A.2d at 96-99.

A motion to dismiss in a jury-waived case may be granted pursuant to Super R. Civ. P. 41(b)(2) whenever a trial justice decides, after the plaintiff has presented his evidence, that he has shown no right to relief based upon the facts and the law. This rule is also applicable to counterclaims pursuant to Super. R. Civ. P. 41(c). ·

In reviewing the decision of a trial justice to grant a motion to dismiss in a jury-waived case, our duty is clearly defined. We must determine whether the findings of the trial justice are supported by the evidence, or whether in making such findings he misconceived or overlooked any material evidence. We must also determine whether, having made supportable findings, he applied the correct rule of law. *Emerson Radio of New England, Inc.* v. *DeMambro,* 112 R.I. 300, 305, 308 A.2d 834, 838 (1973); *Levy* v. *Industrial National Bank,* 106 R.I. 437, 446, 260 A.2d 919, 924 (1970).

The basic issue before the trial justice was the interpretation of the confirmation clause in the modification agreement. It is apparent from the decision of the trial justice that although he considered the testimony of defendant's president, he concluded that the clause was patently ambiguous.

Where an ambiguity exists in a provision of a contractual document, the construction of that provision is a question of fact. *Geary* v. *Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino* v. *A.F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957). Ambiguities in a contract must be construed against the drafter of the document. *A.C. Beals Co.* v. *Rhode Island Hosp.,* 110 R.I. 275, 287, 292 A.2d 865,

872 (1972); *Zifcak* v. *Monroe,* 105 R.I. 155, 159, 249 A.2d 893, 896 (1969); *Russolino* v. *A.F. Rotelli & Sons, supra* at 164, 128 A.2d at 340.

We hold that the trial justice was correct in finding an ambiguity on the face of the modification agreement. Although defendant's witness testified that he interpreted the confirmation clause in the modification agreement to mean that the terms of the original note were incorporated by reference, the clause was clearly susceptible to more than one interpretation, including ratification of any portion of the original note known to be voidable. *See generally* 8A *Words and Phrases* 114-121 (1951).

Furthermore, assuming *arguendo* that "confirmed" was construed to meet defendant's interpretation, the alternative finding of the trial justice that the six-month extension option was also incorporated by reference into the modification agreement was supportable by the evidence. As plaintiffs tendered the amount due to defendant within the six-month extension period, they were never in default and consequently defendant had no right under the promissory note to impose default charges.

The defendant argues that no evidence was ever introduced indicating that plainitffs chose to exercise the six-month extension. Both the original promissory note and the modification agreement are silent as to the manner in which this option was to be exercised. However, the actions of the parties make apparent that the option was exercised. The defendant continued to bill plaintiffs for regular interest payments after the April 29, 1975, due date of the agreement. The plaintiffs paid these bills and defendant accepted payment. These facts support both the alternative finding of the trial justice that the six-month extension option was included in the modification agreement and the implied finding of the trial justice that the option was exercised.

We hold, therefore, that the findings of the trial justice

were supported by the evidence presented. He did not overlook or misconceive any material evidence, and he applied the correct rules of law.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court for further proceedings.

*Quinn, Cuzzone & Geremia, John F. Cuzzone, Jr.,* for plaintiffs.

*Pucci & Goldin, Samuel A. Olevson,* for defendant.