**EAGLE ELECTRIC CO., INC.**

v.

**RAYMOND CONSTRUCTION CO., INC.**

**BROWN'S FLOOR COVERING, INC.**

v.

**RAYMOND CONSTRUCTION CO., INC.**

**No. 78–303–Appeal**

Supreme Court of Rhode Island.

Sept. 29, 1980.

---

John F. McDonough, Providence, for plaintiffs.

Daniel J. Donovan, Providence, for defendant.

## OPINION

MURRAY, Justice.

These consolidated contract actions are before us on the appeals of the defendant, Raymond Construction Co., Inc. (Raymond), from judgments entered in the Superior Court in favor of the plaintiffs, Eagle Electric Co., Inc. (Eagle), and Brown's Floor Covering, Inc. (Brown's).[1]

---

1. This is the second time this case has been before us. The defendant originally appealed from the judgments entered in this matter on September 12, 1975. On April 8, 1976, the Superior Court, acting pursuant to its concurrent jurisdiction over appeals, granted Eagle's and Brown's motion to dismiss the appeal for noncompliance with our rules of appellate procedure. Raymond appealed from the order entered in the Superior Court. At that time, however, defendant's third–party complaints against Progress for Providence, Inc. were still

All three parties supplied labor and materials while engaged in renovating a building. In connection with that endeavor Eagle and Brown's both sought payment from Raymond. When Raymond refused to pay, Eagle and Brown's brought suit. The defendant contends that the trial justice erred in finding that Raymond, as a general contractor, entered into an express or implied agreement with Eagle and Brown's, as subcontractors.

In late 1968 Progress for Providence, Inc.[2] (Progress for Providence), a community–action agency, rented the building located at 358 Public Street in the city of Providence to house a training school for its Concentrated Employment Program (CEP). In preparation for the opening of the school, Progress for Providence entered into a contract in September 1968 with Raymond in which Raymond agreed to reconstruct the west wall of the building and to make the building structurally safe, at a cost of $12,500. The city building inspector refused to issue the building permit, however, until all the building code requirements for a school had been met.

Raymond began the additional work on the property necessary to obtain the permit. In December 1968, after the additional work on the project was substantially completed, John Long (Long), the director of CEP and Raymond DeLeo, the president of Raymond, entered into a written "cost–plus" contract for that work completed and for that remaining to comply with the building inspector's demands. A provision of the agreement provided that Long would represent the owner of the property. All facets of the work that Raymond was not accustomed to performing would be performed under subcontracts. Though Raymond would request bids from the subcontractors, Long was the person who would accept the bids with the advice of Raymond and subject to the approval of the owner of the property. The contract provided further that CEP would reimburse Raymond for any payments it made to subcontractors for work performed pursuant to subcontracts.

Both Eagle and Brown's provided materials and labor during the renovation project, but despite several requests to Raymond for payment, they were never paid for their efforts. Consequently, Eagle and Brown's instituted separate actions against Raymond in the Superior Court. Raymond denied it was liable to plaintiffs for the cost of goods and services provided and filed a third–party complaint against Progress for Providence. Thereafter both Eagle and Brown's filed direct claims for payment against Progress for Providence. These actions were consolidated[3] for trial and heard before a justice of the Superior Court in a jury–waived trial.

At trial, Joseph L. Izzi (Izzi), the president of Eagle testified to the following facts. John Leach (Leach), owner of the Public Street property, introduced Izzi to DeLeo at the project site sometime in November 1968. At that time DeLeo informed Izzi that Raymond would be the general contractor on the job and that Henry Velleca (Velleca), an employee of Raymond, would be the superintendent on the job. DeLeo and Izzi discussed the electrical work to be done, and DeLeo requested Izzi to provide him with a detailed estimate of the total cost of that work.

Eagle began work on the project shortly after Izzi's conversation with DeLeo. Eagle and Raymond subsequently exchanged a series of written communications relating

pending. We remanded the case to the Superior Court for entry of judgment pursuant to Super.R.Civ.P. 54(b). *Eagle Electric Co. v. Raymond Construction Co.*, R.I., 385 A.2d 129 (1978). *Raymond* filed these appeals from the judgments entered with the required Rule 54(b) certification and the record has been transmitted to us.

2. Progress for Providence, Inc. has subsequently amended its corporate charter and is now referred to as Providence Community Action Program, Inc.

3. There were three consolidated cases involved in the Superior Court trial. An appeal was not taken in the third case, *Automatic Sprinkler Corp. v. Raymond Construction Co.*, C.A. No. 74–493, and therefore is not before us.

both to the requested cost estimates and to payment for the work being done. In one letter DeLeo wrote to Eagle, he stated:

"A copy of your submittal has been submitted for approval. We have been advised, however, that more detailed cost information is required.

" * * *

"Your immediate submittal, without further delay will assist us to obtain the required authorization and, therefore, make it possible to submit a requisition for payment."

In further support of its contention that it was working on the project as a subcontractor of Raymond, Eagle introduced into evidence the series of cost estimates that it provided to Raymond and a document that purportedly was an authorization signed by defendant's foreman for it to perform additional work on the project. As work was completed, Eagle forwarded its invoices to Raymond for payment, but they were never paid. The total cost of the electrical work performed amounted to $16,500.15. At trial Izzi recalled Raymond's promise to pay his company for the work:

"Q Mr. Izzi, did Mr. DeLeo or any other officer of the Raymond Construction Company tell you that you would be paid through Raymond Construction Company?

"A Yes, because I called several times to collect even the first requisition and we were told, well, the money wasn't coming yet, hold on. Wait. You know, and we kept going with the project. Kept going. We were getting everything together and matter of fact I even checked to make sure there were no payments made at the time, but we continued pursuit to collect our money.

"Q You were told by Mr. DeLeo that Raymond Construction Company would pay you?

"A That's right. They never told me they wouldn't pay me. Never."

Bernard J. Brown, who was the president of Brown's, testified as follows. John Leach, for whom he had previously performed work, referred him to DeLeo regarding floor covering needed at the Public Street property. Brown subsequently entered into an oral agreement with DeLeo to install floor covering at the property.

After submitting an oral bid for an initial portion of the job, Brown's received an oral authorization from Raymond to begin the work. Brown's had no prior contact with Progress for Providence before beginning the work and received no promise from it regarding payment for work done. However, Long, the director of CEP, was on the job site daily and was directing Brown's work.

After the floor covering had been partially installed, Long requested that some additional work be done on the property. Long told Brown to forward the bill to Raymond. Brown contacted DeLeo, who authorized Brown's to proceed with whatever work Long wanted done. DeLeo stated that Brown's should forward the bill to him, and that Brown's would be paid when Raymond was paid for the project by Progress for Providence. Brown's eventually completed installing the floor covering and submitted a bill totaling $5,117 to Raymond for payment.

John Long also testified and stated that as director of CEP he received all the bids submitted for work on the project and selected which contractors would do the work. Long testified that he was on the job site daily and directed the renovation work being done, but he admitted that the technical supervision of the work was done by Velleca, Raymond's foreman. He stated also that he at times authorized certain additional work to be done on the building.

Raymond's basic contention at trial was that DeLeo never gave any authorization to either Eagle or Brown's to begin work at the Public Street property and never agreed to pay either plaintiff for the work it performed there. He testified that although his company did receive $105,000 under the "cost–plus" contract from Progress for Providence, it did not do any of the electrical or floor covering work

there. He admitted he attempted to obtain payment from Progress for Providence for work done by plaintiffs, but maintained that he did so only because Long had directed plaintiffs to submit their bills through Raymond. DeLeo characterized his efforts as a means of expediting payment for all the parties involved in the project. Apparently attempting to rebut Eagle's evidence that Raymond's foreman had authorized additional work to be done on the project, Raymond introduced a document containing Long's authorization for other additional electrical work.

At the conclusion of the testimony the trial justice rendered an oral bench decision:

> "In the matter of Eagle Electric Company Inc. versus Raymond Construction Company, the Court accepts the contention of the plaintiff that the plaintiff was a sub–contractor of Raymond Construction Company. * * * The fact of the matter is Raymond Construction Company did perform work at the location on Public Street on property owned by one John Leach and the Court finds as a fact that Eagle Electric Company did perform work at this location as a sub–contractor of the Raymond Construction Company. The Court rejects the contention of the respondent that the Eagle Electric Company was not a sub–contractor of the respondent Raymond Construction Company.
> " * * * *
> "In the claim of Brown['s] Floor Covering Inc. versus Raymond Construction Company, the Court will likewise accept the contention of the Brown Floor Covering Inc. and reject the contention of the respondent, Raymond Construction Company and find as a fact that the petitioner, Brown['s] Floor Covering Inc. was a sub—contractor of Raymond Construction Company and that Brown['s] Floor Covering did perform work at the location on Public Street at the property being renovated by Progress for Providence * * *."

The trial justice subsequently entered judgment in favor of Eagle for $16,515 and for Brown's for $5,117, prompting Raymond to appeal.

Raymond on appeal contends that the trial justice overlooked or misconceived material evidence in finding that Eagle and Brown's were subcontractors of Raymond. It contends also that the evidence adduced at trial was insufficient, as a matter of law, to establish a contract either express or implied in fact between plaintiffs and defendant. The defendant thus asserts that the trial justice was clearly wrong in finding that plaintiffs were subcontractors and that defendant was liable to them.

The difficulty arising in our review of this case is that the trial justice's bench decision contains findings of only conclusional rather than basic facts, raising the question of whether it complies with the requirements of Rule 52(a) of the Superior Court Rules of Civil Procedure. That rule in pertinent part provides:

> "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *."

As we stated in *Rowell v. Kaplan*, 103 R.I. 60, 235 A.2d 91 (1967) and have repeated many times since, we will not in every instance insist upon strict compliance with the fact–finding requirements of Rule 52(a). *Id.* at 70, 235 A.2d at 97. The rule does not require the trial justice to engage in an extensive analysis and discussion of all the evidence. His findings, even though brief, will suffice if they address and resolve the controlling and essential factual and legal issues involved in the case. *J. W. A. Realty, Inc. v. City of Cranston*, R.I., 399 A.2d 479, 484–85 (1979); *The Shoor–Elias Glass Co. v. Raymond Construction Co.*, 114 R.I. 714, 715–16, 339 A.2d 250, 252 (1975); *Spangler v. Schaus*, 106 R.I. 795, 807, 264 A.2d 161, 168 (1970). Nor will we insist upon strict compliance with the rule's requirements if a full understanding of the issues may be reached without the aid of separate findings. *The American Ins. Co.*

v. *Aetna Life Ins. Co.*, 116 R.I. 518, 522, 359 A.2d 37, 39 (1976). Noncompliance with this rule, however, entails the risk of reversal or remand unless the trial justice sufficiently articulates his factual considerations and his resulting legal conclusions. *Fryzel v. Domestic Credit Corp.*, R.I., 385 A.2d 663, 666 (1978); *S. M. S. Sales Co. v. New England Motor Freight, Inc.*, 112 R.I. 366, 367, 310 A.2d 141, 142 (1973); *Andoscia v. Douglas*, 107 R.I. 199, 201, 266 A.2d 55, 56 (1970).

A reading of the trial justice's oral decision in this matter indicates that his findings of fact relating to the controlling issue of whether Eagle and Brown's were acting as subcontractors of Raymond in the renovation of the building consisted of only the bare statements that the plaintiffs performed that work as subcontractors of the defendant. The deficiency readily apparent in this decision is that the finding that a subcontractual relationship existed between the plaintiffs and the defendant is a conclusion of ultimate fact without subsidiary or basic findings of fact to indicate to us the basis of that conclusion. Such conclusions of ultimate fact by the trial justice without the articulation of his underlying factual determinations from the conflicting evidence presented at trial fail to satisfy the fact–finding requirements of Rule 52(a) or the guidelines set forth in *Rowell v. Kaplan, supra*, making an intelligent appellate review of his decision impossible. *The American Ins. Co. v. Aetna Life Ins. Co.*, 116 R.I. at 522, 359 A.2d at 39 (citing *Woods Constr. Co. v. Pool Constr. Co.*, 314 F.2d 405, 406 (10th Cir. 1963)).

For these reasons, the case is remanded to the Superior Court with directions that the trial justice who heard the case vacate the judgments entered in favor of the plaintiffs and then make adequate and sufficient findings of fact and conclusions of law to indicate the basis of his decision.