DECISION
This case is before the Court for decision following a non-jury trial on a complaint by plaintiff V. George Rustigian Rugs Inc. (hereinafter Rustigian). The plaintiff brings this action pursuant to R.I.G.L. 1956 § 6-14-1 (going out of business statute) seeking to restrain and enjoin any acts which violate said statute, and seeking a civil penalty of $100,000 and attorney's fees. By counterclaim against Rustigian, the defendants, Renaissance Gallery (hereinafter Renaissance) and Alireza Nowrouzi (hereinafter Nowrouzi), allege defamation, abuse of process, interference with contractual relations, and tortious interference with advantageous business relations. Decision is herein rendered in accordance with Super. Ct. R. Civ. P. Rule 52.
 FACTS AND TRAVEL
This case concerns a going out of business sale in the retail carpet business. Defendant Renaissance is a Rhode Island corporation with a former place of business at 736 Hope Street in Providence, Rhode Island. Co-defendant Nowrouzi is an individual residing in Massachusetts and an officer and shareholder of Renaissance.[1] Plaintiff Rustigian is a rug dealer with its principal place of business located at 1 Governor Street, Providence, Rhode Island. Renaissance, through its principal, Nowrouzi, is also in the business of selling rugs.
Oriental Rug Gallery, (hereinafter Oriental), a competitor of Rustigian, hired Renaissance to manage Oriental's retail rug business on or about July 31, 1997. From August 15, 1997 through approximately September 30, 1997, Oriental, with the management and supervision of Renaissance, conducted large clearance sales in an effort to reduce it's carpet inventory. These clearance sales were widely advertised throughout Rhode Island.
According to Renaissance, a decision was made to conduct a "going out of business sale" at the end of September or early October 1997. Oriental, with Renaissance's assistance, prepared and filed the appropriate application with the Providence City Clerk's office for a going out of business sale. In accordance with R.I.G.L. 1956 § 6-14-4, the City Clerk issued a license to Oriental after being satisfied from the application that the sale "is of the character which the applicant desires to conduct and advertise." Subsequent to approval of the application, Oriental held a going out of business sale commencing on October 25, 1997 and continuing successfully thereafter until early December 1997.
Rosalind Rustigian, president of Rustigian, learned of the going out of business sale and went to Oriental's place of business in October 1997, to discuss the sale with one of Oriental's owners, Raymond Barlavi. Ms. Rustigian was concerned that Oriental's going out of business sale was not genuine and that the extensive advertising would saturate the market and reduce Rustigian's own carpet sales.
Ms. Rustigian subsequently took several actions in reference to Oriental's going out of business sale. First, Ms. Rustigian contacted a Rhode Island television station and met with two reporters regarding her concerns that the going out of business sale was illegal. Next, Ms. Rustigian called the Rhode Island Attorney General and asked him to initiate an investigation into the going out of business sale. Ms. Rustigian was concerned that (1) the going out of business sale was illegal; (2) Oriental had purchased or acquired inventory in violation of the going out of business sale statute; (3) Oriental had deceived the public; and (4) Oriental was guilty of overcharging for its carpets. Lastly, Ms. Rustigian is alleged to have told customers of Oriental that Oriental's going out of business sale was illegal.
As a result of Ms. Rustigian's efforts, Channel 10 in Providence, Rhode Island ran two stories on the nightly news reporting the charges of illegality made by Rustigian and the existence of the investigation by the Attorney General's office. The Attorney General's office, after conducting an investigation, declined to pursue any charges against Oriental.
Rustigian then filed a Complaint with this Court on December 8, 1997 alleging that Oriental had violated R.I.G.L. § 6-14-1 (going out of business statute) and R.I.G.L. 6-13-1.1 et seq. (Deceptive Trade Practices Act). After initial discovery, Rustigian filed a Second Amended Complaint on April 9, 2001. The Second Amended complaint dropped Oriental as a defendant and added Renaissance and Nowrouzi as defendants.[2]
Renaissance and Nowrouzi counterclaimed against Rustigian with (1) defamation; (2) abuse of process; (3) interference with contractual relations; and (4) tortious interference with advantageous business relations.
This matter was heard before this Court on June 3rd and 4th, 2003. The defendants made a motion for summary judgment at the opening of the trial. This Court denied the motion and heard testimony from the parties. Subsequently, the defendants made a motion for judgment as a matter of law at the conclusion of the plaintiff's case. This Court reserved decision on the motion. Renaissance and Nowrouzi then withdrew their counterclaims for defamation, interference with contractual relations, and tortious interference with advantageous business relations at the close of the trial in their post-trial memorandum.
 STANDARD OF REVIEW
In a non-jury trial, "the justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon credibility of the witnesses, and draws proper inferences." Id. "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id. See also Rodriques v.Santos, 466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact). "A party challenging the finding of a trial justice sitting without a jury bears a heavy burden." WilliamConnor et. al. v. Paul Sullivan; Paul Sullivan v. William Connor et.al., No. 2002-247 — Appeal; No. 2002-248 — Appeal, slip. op. (R.I., filed June 19, 2003) (citation omitted).
"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . ." See Super. Ct. R. Civ. P. Rule 52. The Rhode Island Supreme Court has held that in order to comply with this rule, the trial justice need not engage in extensive analysis and discussion. J.W.A. Realty, Inc. v. City of Cranston, 121 R.I. 374,399 A.2d 479 (1979); Eagle Elec. Co. v. Raymond Construction Co.,420 A.2d 60 (R.I. 1980). Strict compliance with the requirements of Rule 52 is not required if a full understanding of the issues may be reached without the aid of separate findings. 420 A.2d 60 (R.I. 1980). Even brief findings and conclusions are sufficient as long as they address and resolve pertinent, controlling factual and legal issues. White v.LeClerc, 468 A.2d 289 (R.I. 1983).
 JUDGMENT AS A MATTER OF LAW
A trial judge reviews a motion for judgment as a matter of law by examining:
 "the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. . . . If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." Filippi v. Filippi, 818 A.2d 608, 617 (R.I. 2003) (quoting Marketing Design Source, Inc. v. Pranda North America, Inc., 799 A.2d 267, 271 (R.I. 2002)).
"When there are no relevant factual issues and `defendant is entitled to judgment as a matter of law, then the trial justice should grant the motion and dismiss the complaint.'" Id. (quoting Marketing DesignSource, Inc., 799 A.2d at 271-72). At the close of Rustigian's case, Renaissance and Nowrouzi moved for judgment as a matter of law on the issue of R.I.G.L. § 6-14-1 et seq. This Court grants the defendants' motion for the reasons set forth below.
 GOING OUT OF BUSINESS SALE
In Rhode Island, going out of business sales are regulated pursuant to R.I.G.L. § 6-14-1 et seq. The section of the statute at issue in this case is § 6-14-9 (Additions to stock in contemplation of sale). Section 6-14-9 states:
 "No person in contemplation of a "closing out sale," "going out of business sale," "discontinuance of business sale," "selling out," "liquidation," "lost our lease," "must vacate," "forced out," "removal," or sale of other designation of like meaning, or a sale of goods, wares, and merchandise damaged by fire, smoke, water or otherwise, under a license as provided for in §§ 6-14-3 — 6-14-6 shall order any goods, wares, or merchandise at the sale, and any unusual purchases and additions to the stock of the goods, wares and merchandise within thirty (30) days prior to the filing of the application for license to conduct the sale mentioned in § 6-14-3 shall be presumptive evidence that the purchases and additions to stock were made in contemplation of the sale and for the purpose of selling the purchases and additions to stock at the sale." (Emphasis added.)
Rustigian argues that Renaissance and Nowrouzi violated § 6-14-9 by buying significant quantities of rug inventory, as agents for Oriental, in contemplation of a going out of business sale. Renaissance and Nowrouzi respond that they did not purchase any inventory in contemplation of a going out of business sale because they did not contemplate going out of business at the time that the inventory was purchased. In addition, Renaissance and Nowrouzi argue that Rustigian is objecting to inventory purchased forty-five (45) days prior to the going out of business sale, which is well within the thirty (30) day time limit set forth in § 6-14-9.
At trial, Rustigian called Raymond Barlavi to testify. Mr. Barlavi a co-owner of Oriental, hired Nowrouzi to manage the store in 1997. Mr. Barlavi testified that at the times relevant to this matter, he was semi-retired and left the running of the store to his partner, Ahmad Farhoumand. Mr. Barlavi could not recall that there were any orders or deliveries after Nowrouzi began to manage the store. The Court found Mr. Barlavi's testimony compelling.
Rustigian then called Howard Weaver, Director of Operations for Greylawn Foods (Greylawn). Mr. Weaver testified that according to his records, Greylawn had made a delivery to Oriental on or about August 26, 1997. However, Mr. Weaver testified that he had no personal knowledge of the order, nor knew by whom or when the order had been placed. Mr. Weaver testified that according to the shipping manifest, the delivery was to occur at 5:00 a.m. to the Hope Street store. This Court found Mr. Weaver's testimony that he had no direct knowledge of the contents of the delivery, or knowledge of when the order had been placed, credible and compelling. He was a forthright witness, but contributed nothing to the plaintiff's case.
Rustigian also called Elizabeth Dupuis and David Margolis, customers of Oriental, to testify as to the change in inventory before and after the going out of business sale. Both testified that there were more rugs than usual on display in the store during the going out of business sale. Ms. Dupuis' and Mr. Margolis' testimony was not credible relative to the amount of inventory allegedly purchased in contemplation of a going out of business sale. Acquaintances of Rosalind Rustigian, their testimony was speculative. They had no knowledge as to the amount of inventory in the store, whether there was inventory in the basement, or the actual existence or amount of inventory on one day or month.
The defendants introduced the deposition testimony of Ahmad Farhoumand, a former co-owner of Oriental, who resides in Florida and was unavailable to testify. Mr. Farhoumand testified that he and Ray Barlavi developed a business plan some time in 1997 to expand the store and increase the inventory in hopes of generating additional sales activity. Mr. Farhoumand further testified that when the revised business plan failed to stimulate additional sales, he sought outside managerial assistance from Nowrouzi. Farhoumand denied that Nowrouzi had been engaged to conduct a going out of business sale. (See Farhoumand Deposition p. 81.) However, Farhoumand did testify that there was always a possibility that they may have to undertake a going out of business sale in the future. (See Farhoumand Deposition p. 82.) This Court found Mr. Farhoumand's deposition testimony credible, evidencing that Mr. Barlavi did not purchase the subject inventory in contemplation of a going out of business sale.
The defendants next called Rosalind Rustigian. Ms. Rustigian testified that she offered Mr. Barlavi One-hundred $100.00 dollars if he were really going out of business. Ms. Rustigian also testified that she approached the Attorney General to investigate the going out of business sale and that she went to a television station, Channel 10 in Providence, Rhode Island, and gave an interview about the going out of business sale. Ms. Rustigian further testified that she hired an investigator, Jack Leonard, to investigate the legality of the going out of business sale. Ms. Rustigian denied that she was acting to create negative publicity for the going out of business sale; she felt she was "only doing her duty." Finally, Ms. Rustigian testified that she had no personal knowledge that any of the defendants ordered extra inventory in contemplation of a going out of business sale. This Court finds Ms. Rustigian's testimony as to whether she had any personal knowledge of a violation of § 6-14-9 particularly compelling.
In view of the testimony given at trial, this Court finds that Rustigian has failed to meet its burden of proof by more than a preponderance of the evidence that the defendants violated § 6-14-9. The evidence failed to establish that the defendants purchased inventory in contemplation of a going out of business sale. Moreover, even if Rustigian had been able to prove that the defendants had purchased the inventory in contemplation of the going out of business sale, which it failed to do, its claim must fail because it alleges that the inventory was purchased well before the thirty (30) day limit set forth in §6-14-9. Rustigian alleges that the inventory at issue was delivered forty-five (45) before the going out of business sale. (See Plaintiff's Post-trial Proposed Findings of Fact and Conclusions of Law p. 4.) Rustigian's argument — that a presumption under § 6-14-9 that any unusual additions to the stock of goods, regardless of timing, in contemplation of a going out of business sale is illegal — is contrary to the plain and unambiguous language of § 6-14-9. The intent of the legislature is determined "by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning." C J Jewelry Co., Inc. v. Department ofEmployment and Training Board of Review, 702 A.2d 384, 385 (R.I. 1997). "It is well settled that when the language of a statute is plain and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."Providence Worcester R. Co. v. Pine, 729 A.2d 202, 208 (R.I. 1999) (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). The legislature specifically included a thirty (30) day time frame within the going out of business statute, and this Court is not inclined to disregard the intent of the Legislature in this matter. Accordingly, after reviewing the evidence in the light most favorable to the non-moving party, and there not being any factual issues upon which reasonable persons might draw different conclusions, the motion for judgment as a matter of law is granted.
 COUNTERCLAIM II: ABUSE OF PROCESS
Renaissance and Nowrouzi contend that Rustigian has used the legal process for the ulterior purpose of destroying Oriental's and Renaissance's businesses. Rustigian denies the allegations.
An action for abuse of process provides a remedy for a claim arising when a legal procedure, although set in motion in proper form, has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed. See Wright v. Zielinski. No. 2001-57-Appeal. 2003 Opinion filed June 11, 2003; See also Michael Labonte v. National Grange MutualInsurance Co. 810 A.2d 250 (R.I. 2002). In order for a plaintiff to sustain an action for abuse of process, he or she must demonstrate that (1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings to obtain an ulterior or wrongful purpose for which the proceedings were not designed. De Leo v.Anthony A. Nunes, Inc., 546 A.2d 1344 (R.I. 1988).
The Court heard testimony from the parties concerning the reason for the present litigation. Rosalyn Rustigian testified that she brought this lawsuit because she believed that Renaissance and Nowrouzi were illegally conducting a going out of business sale. Ms. Rustigian further testified that she did not have an ulterior motive for instituting the lawsuit. As such, this Court finds that Rustigian's purpose in filing this matter was not "ulterior or wrongful"; rather, it was misguided. The defendants' Counterclaim II, abuse of process, is denied.
 MOTION FOR COSTS AND FEES
The defendant requested "damages to be determined by the Court, plus punitive damages, legal fees, interest and costs." This Court denies the defendants' request for punitive damages for the foregoing reasons.
The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. Palmisano, 624 A.2d 314, 322 (1993). An award of punitive damages is considered an extraordinary sanction and is disfavored in the law, but it will be permitted if awarded with great caution and within narrow limits. Id. at 318. It is for the trial justice to determine whether the party seeking punitive damages has met this high standard to support such an award, and it is in the discretion of the trier of fact to determine whether and to what extent punitive damages should be awarded. Id.; see also Peckham v. Hirschfeld, 570 A.2d 663, 668 (R.I. 1990).
The Court notes that the defendants withdrew their counterclaims of interference with contractual relations and tortious interference with advantageous business relations at the close of the trial. The only counterclaim standing at the end of the trial was the abuse of process, denied by this Court. In addition, with respect to damages, this Court notes that the defendants' withdrew their request for punitive damages in their post trial memorandum. Accordingly, this Court declines to award the defendants punitive damages, which are not warranted here.
Defendants also request costs. A prevailing party in a civil action is entitled to recover costs "except where otherwise specially provided, or as justice may require, in the discretion of the court." Rhode Island General Laws 1956 § 9-22-5. Our Supreme Court has held that costs are normally considered the expenses of suing another party, including filing fees and fees to serve process. Kottis v. Cerilli, 612 A.2d 661, 669 (R.I. 1992). However, it is well settled in this jurisdiction that it is in the discretion of the trial judge to award costs to a prevailing party in a civil action. Liberty Mutual Insurance. Co. v. Tavarez, 797 A.2d 480
(R.I. 2002); Chiaradio v. Falck, 794 A.2d 494 (R.I. 2002); 612 A.2d 661
(R.I. 1992). A trial judge may take into consideration how close the case was, the complexity of the case, and the nature of the case when deciding whether to award costs to the prevailing party. Remington Prods., Inc.v. North Am. Phillips Corp., D.C. Conn. 1991, 763 F. Supp. 683. In requesting the technically "undefined" costs, the prevailing party must "specify the items in detail" as such requests must be properly documented. See Matter of Schiff, 684 A.2d 1126, 1140 (1996).
In the instant case, this Court notes that the plaintiff was impassioned in her belief that there was something awry; however, her attorneys should have matched this passion with supporting legal evidence, as opposed to "wishful thinking." It was apparent during the course of the trial that the plaintiff's presentation of evidence was woefully short of facts and substantiated largely by generalizations and speculation. This Court hereby awards to the prevailing parties all reasonable and necessary costs pursuant to § 9-22-5 and requests that counsel submit affidavits in support of said costs.
 CONCLUSION
For the foregoing reasons, the Court grants defendants' motion for judgment as a matter of law with respect to § 6-14-9. This Court denies Counterlaim II, abuse of process. Defendants are awarded costs subject to submission of affidavits in support thereof. Counsel shall prepare the appropriate judgment for entry.
[1] Alireza Nowrouzi was at all relevant times during this litigation the sole shareholder and officer of the Defendant Renaissance.
[2] Oriental filed for bankruptcy after the first Complaint and prior to the Second Amended Complaint.