Joseph Russolino *d.b.a.* Joseph Russolino & Sons Co. *vs.*

A. F. Rotelli & Sons, Inc.

JANUARY 15, 1957.

Present: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is an action of assumpsit on the common counts. It was tried before a justice of the superior court, sitting without a jury, who rendered a decision for the plaintiff for $7,432.81 with interest at 6 per cent from the date of the writ to the date of the decision, September 15, 1954. Both parties have prosecuted bills of exceptions to this court, the plaintiff because he claims that the amount awarded him was too small, and the defendant because it claims such amount was too large.

The plaintiff's bill contains nine exceptions, but in his brief and argument he discussed only the one directed to the decision. The defendant's bill contains twenty-five exceptions, but only a few were referred to in the brief or argument and most of these relate to the items as to which it claims the trial court made improper allowances to plaintiff.

In 1950 the defendant was building a store for Sears Roebuck and Co. and the plaintiff was interested in obtaining the contract for the plastering. He first made a *lump sum* bid of $64,000, but when it turned out that there were going to be many changes both parties thought it would be better to use *unit* prices. Accordingly plaintiff made a written offer for the work and materials which contained unit prices for seven items. The defendant accepted the offer.

When the trial was in its second day it was stipulated in writing between the parties that Harold J. Dee, an experienced plasterer, should measure off the quantity of work done by plaintiff, classify its character, and allocate to each item of work the prices set forth in the contract. The stipulation also provided that Mr. Dee should supply the court with "a figure representing the work and labor in connection with the erection of the ceiling on the first or ground floor, requiring a suspended ceiling dropped below the main girders" to be figured at a price of $5.50 per square yard. The stipulation also contained the following provision:

"It is also agreed between the parties that the findings of Harold Dee in respect to the quantity of work done and the classification of work done shall be binding upon the parties in this case; also that the price stated in the contract signed by the parties to this case, and dated October 10, 1950, shall be binding upon the parties with the single exception of the item referred to above, to wit: the suspended ceiling dropped below the main girders on the first or ground floor.

Thereafter the case shall be continued and Judge Joslin shall, upon evidence submitted, determine whether the contract price shall prevail as to that item. Evidence shall be presented by both sides in connection with this item. This will be the sole issue to be determined by Judge Joslin."

The trial was adjourned from April to December. In the meantime Mr. Dee undertook to carry out his duties under the stipulation. In his first report he noted that one of the items of work which plaintiff had done was not mentioned in the contract. The defendant's counsel then wrote to Mr. Dee suggesting that he put a figure on this item having in mind comparable contract prices. Thereupon Mr. Dee filed amended reports putting prices upon this and the other items he had omitted from his first report. All of these reports were admitted in evidence with defendant's consent.

The parties did not ask the trial justice to make special findings as they had a right to do under general laws 1938,

chapter 526, §6. However, he made what amounts to special findings by putting a figure on the various items. We shall consider such of those findings as are attacked by the parties in their briefs.

The plaintiff claims that, because defendant took away from him much of the work he thought he was going to do, it amounted to an abandonment of the contract and entitled him to the fair value of the work which he did. His counsel gave that as the reason for bringing this form of action rather than suing on the contract. The reason for the change from a *lump sum* to *unit* prices, as above mentioned, refutes this argument, but in any event the stipulation clearly affirmed the contract as to every item with the possible exception of the provision dealing with the first floor ceiling, and as to that the court was to decide whether the contract price should prevail.

The trial justice awarded plaintiff $4.50 per square yard for the first floor ceiling. The plaintiff claims that he should have awarded him $5.50 per square yard. The pertinent contract item reads: "First Floor Ceiling—Hung by channels, on metal lath and carried directly beneath the main girders. $4.50 per sq. yd." The first floor ceiling actually was suspended, that is, it was hung by wires eighteen inches below the girders. Although the specifications between the defendant and Sears Roebuck and Co. called for a "suspended" ceiling, those specifications were not incorporated in the contract between the parties and the word "suspended" is not contained in the item we have just quoted. The very provision in the stipulation relative to the first floor ceiling shows the parties considered that the quoted contract term was ambiguous. The construction of an unambiguous contract term is a question of law, but when as here there is an ambiguity in that term the construction becomes a question of fact. *Muirhead* v. *Fairlawn Enterprise, Inc.*, 72 R. I. 163, 172. The plaintiff drew the con-

tract and ambiguities are generally resolved against the writer. *Armfield* v. *McClure, Inc.,* 77 R. I. 390, 394.

The word "Hung" in the quoted contract term suggests suspension. In one of his reports Mr. Dee used the word "hung" in relation to the first floor ceiling. He also said in substance that these words were used interchangeably. The plaintiff's estimator used the words "hung" and "suspended" in two successive answers relative to this ceiling. These facts together with the last rule of construction to which we have referred warranted the conclusion that the contract as to the first floor called for a suspended ceiling. Therefore the trial justice was correct in awarding the plaintiff $4.50 rather than $5.50 a square yard for this ceiling.

The plaintiff's other claim is that he should have been awarded a dollar more for the 612 square yards of the basement ceiling, which was in fact constructed as a suspended ceiling. It is admitted that the contract term for this ceiling called for a contact ceiling. Mr. Dee said that this part of the basement ceiling was similar to that on the first floor, namely, a suspended ceiling. By the stipulation the parties were bound by Mr. Dee's classification. Since we have just decided the trial justice was justified in construing the term of the contract relative to the first floor ceiling as calling for a suspended ceiling, it follows that the price of $4.50 a square yard for such ceiling should apply to this small part of the basement ceiling. All of the plaintiff's exceptions are therefore overruled.

The defendant's attacks upon the decision can be treated under three headings: (1) The allowance of 15 cents per square foot extra for putting a hard finish on columns, a total of $1,069.65; (2) the round figure of $1,000 awarded to pay plaintiff for what had not been covered in the specific awards; and (3) an allowance for several small items which were extras or claimed to be extras. The plaintiff made no attempt to defend these disputed items, confining himself entirely to complaining about what was not awarded him.

The contract term relative to the columns reads as follows: "Fireproofing Of Columns—To be boxed in with channel iron and metal lath with 1 (one) inch of Zonolite Plaster and expanded corner beads. .85 per sq. ft." It is apparent from Mr. Dee's testimony that the contract term did not make it clear whether the finish was to be rough or hard. There was, therefore, an ambiguity in the meaning of that term. Mr. Dee gave as his reason for allowing plaintiff 15 cents a square foot extra for those parts of the columns that were hard finished the fact that *in the stipulation* the parties had agreed to give plaintiff 85 cents a square foot for the beams which were *rough* finished. He said that because of this he assumed it would be agreeable to the parties to allow plaintiff 15 cents a square foot extra for those parts of the columns that were in fact hard finished.

The agreement in the stipulation furnished no basis for such conclusion. The question was what did the contract mean. If plaintiff wanted to be sure of getting paid for a hard finish, he should have made the contract clear on this point *while he was writing it.* The plaintiff himself admitted that in similar buildings in Providence the parts of columns that were exposed were hard finished. Here again the ambiguity should be resolved against the party who drafted the agreement. There was no evidence to support the extra allowance of 15 cents a square foot. The trial justice was in error in making this allowance of $1,069.65 and that amount should be subtracted from the decision.

Assuming that plaintiff should have been paid for something more than the specific awards, he failed to furnish the slightest evidence as a basis for the extra award of $1,000. The plaintiff had the burden of proving not only that more extra work was authorized and was done but also the value thereof. *Sullivan* v. *District of Columbia Paper Mills, Inc.,* 67 R. I. 330. This amount should also be subtracted from the decision.

We will now discuss the group of relatively small awards

to the plaintiff for what he claims were extras. As to these, the defendant claims that they were not extras, or that the amount awarded was too much, or that there was no evidence to support the awards. In this connection it relies upon its exceptions numbered 2 to 25. We have examined these exceptions and are of the opinion that those rulings, if erroneous, were not prejudicial. The reports which were admitted with the consent of defendant, together with Mr. Dee's unchallenged testimony as to many of these items, constitute ample evidence to support the awards thereon. In no instance did defendant produce evidence of what the proper price should be, but in two instances Mr. Rotelli testified that the time it should have taken to do the work showed that Mr. Dee's figures were too high. Of course, the trial justice was not obliged to accept Mr. Rotelli's testimony.

The largest item in this group is the last one in Mr. Dee's first report, to which we have already referred. Following the letter that counsel for defendant wrote to Mr. Dee, the latter put a price of $5.50 a square yard on this work. There is a contract price of $5.50 a square yard and in view of the request of defendant and the stipulation, we do not see how defendant can claim that another contract price, $4.50 a square yard, should have been allocated to this work, which in effect Mr. Dee classified as the kind of work for which the contract provided a price of $5.50 a square yard. This is in line with the reasoning advanced by defendant in support of the trial justice's denial of extra compensation for that part of the basement ceiling actually erected as a suspended ceiling.

One of defendant's exceptions was to the failure of the trial justice to allow Mr. Rotelli to testify as to prices but it made no offer of proof. Consequently we cannot know whether it was prejudiced by that ruling. The defendant also claims that Mr. Dee was not an expert. The trial justice very properly took a different view as to this. We can-

not sustain defendant's attack on this group of items except as to $75 allowed by the trial justice for installing some angle irons. This seems to have been the result of a misunderstanding between court and counsel just before a recess in the trial. It may well be that the trial justice understood that they had so agreed, as he intimated, but the record does not bear out such an agreement. This amount should also be subtracted from the decision.

In our judgment the decision in the sum of $7,432.81 is clearly wrong on the evidence. We are of the opinion that it is excessive to the extent of $2,144.65, representing items hereinbefore mentioned, and this sum should be deducted from the amount of the decision, leaving $5,288.16 due the plaintiff. Interest of 6 per cent from the date of the writ to the date of the decision should then be added to this amount.

All of the plaintiff's exceptions are overruled, and all of the defendant's exceptions are overruled except its exception numbered 1 to the decision, which is sustained to the extent above set forth. On January 23, 1957 the plaintiff may appear before this court to show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for him in accordance with this opinion.

*Walter I. Sundlun,* for plaintiff.

*Jacob S. Temkin,* for defendant.