**MBT CONSTRUCTION CORP.**

v.

**KELHEN CORPORATION.**

**No. 79–83–Appeal.**

Supreme Court of Rhode Island.

July 15, 1981.

Corcoran, Peckham & Hayes, Kathleen Managhan, Patrick O'N. Hayes, Jr., Newport, for plaintiff.

Moore, Virgadamo & Lynch, Ltd., Jeremiah C. Lynch, Jr., Stephen A. Haire, Newport, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant Kelhen Corporation from a judgment by the Superior Court awarding the plaintiff MBT Construction Corp. the sum of $4,617.87 in an action involving a contract executed by the parties.[1]

Henry Bigger, president of defendant corporation, and Brian Gillson, vice president and general manager of plaintiff corporation, began discussions in May 1976 concerning a restaurant defendant wished to have constructed in a building on Thames Street in Newport. The defendant corporation was the lessee of this building, which was owned by Seaboard Realty Corp. It was agreed eventually that plaintiff would build the restaurant for defendant and also would do some work on the premises for Seaboard.

The plaintiff, acting as general contractor, began work at the Thames Street location sometime in June 1976 but did not start the work contracted with defendant until July 9, 1976. The parties delayed signing a contract until July 23, 1976, preferring to operate on the basis of "mutual trust" in the early weeks. The July 23rd agreement called for payment under a cost-plus arrangement with defendant agreeing to pay an additional 10 percent for materials and subcontracted labor and 15 percent for plaintiff's employees' labor, as well as the actual cost. The parties further agreed that defendant's liability for work done under the contract would not exceed $10,000.

Apparently, the $10,000 limit did not attach to all work that plaintiff might perform in constructing the restaurant for defendant. The contract terms indicated that plaintiff would proceed in accordance with plans described in the contract and specifications drawn by both an architect and a restaurant-equipment company. Another contract provision, however, allowed defendant to request additions not contemplated by the plans or specifications. The plaintiff was to add the cost of any such requested additions to the contract price. The parties further stipulated to put agreements for these changes in writing before the additional labor and materials were furnished.

As the work progressed, Gillson began to realize that some changes might be necessary to construct the kind of restaurant defendant wanted. Consequently, either Gillson or his foreman talked to Bigger concerning each proposed change. In each case, Bigger was informed that the change would cost more money although neither party seemed to realize exactly how much more. By Bigger's own admission, he agreed to every change that plaintiff made.

None of these contract modifications was put in writing, nor does it appear that either party made any attempt or request to reduce the modifications to writing. At the time the parties executed the agreement, some of the extra work had already been discussed and initiated. In addition, the contract made time of the essence and recited a completion date of August 1, 1976; but as the work continued, it became apparent that this date was not realistic. Nevertheless, defendant did pay plaintiff the sum of $10,000 in several installments.

In late August, plaintiff ceased construction after presenting defendant with a bill that defendant refused to honor. The plaintiff had substantially completed the work under the contract, including a number of extras. This bill, dated August 27, 1976, showed a total charge for labor and

1. The trial court also entered judgment in the sum of $500 on defendant's counterclaim for work not completed under the contract by plaintiff.

materials of $20,058, a credit for the $10,000 payment, and a balance due of $10,058.[2]

The defendant continued to refuse to make payment, and plaintiff filed a four-count complaint in Superior Court. Each count asked for the balance due plus interest and costs. The defendant responded with an answer denying plaintiff's allegations and a counterclaim alleging plaintiff's failure to complete certain work and the improper installation of the floor. The defendant asked for $10,000 in damages plus interest and costs.

At the trial, plaintiff attempted to prove that the amount of labor and materials for work under the contract equaled or exceeded $10,000. The plaintiff also offered testimony and other evidence to demonstrate that he had expended over $10,000 worth of extra labor and materials in building the restaurant. The plaintiff's proof of cost consisted of receipts, invoices, canceled checks, memoranda, payroll records, and his own testimony.

The trial justice found that the parties had executed a valid contract that closely paralleled an earlier unexecuted draft of their agreement. He further found that plaintiff's work for defendant started on July 9, 1976, and terminated on August 12, 1976. After examining the evidence, the court concluded that plaintiff had actually spent more than $20,000 in rendering services for defendant but also expended more than $10,000 for items covered under the contract. Although the court found expenditures in excess of $10,000 for improvements made under the contract plans, plaintiff was not allowed to recover for these excess expenditures.

With regard to the extras, however, the court granted plaintiff a partial recovery for expenditures made. In reaching this determination, the trial justice made several findings. The court found that both parties consistently ignored the contract provision requiring contract modifications for extras to be in writing. The court determined that defendant agreed to each change proposed by Gillson. In addition, the trial justice used the contract cost-plus formula to fix the amount of recovery for those extras awarded to plaintiff.

The court reviewed evidence of all alleged extras and made a specific award for most items; in some cases recovery was denied or only partially allowed. The total amount awarded to plaintiff was $4,617.87. This amount was reduced by a $500 judgment for defendant on its counterclaim for unfinished contract work. Thereafter, defendant took this appeal.

The three issues we must decide are (1) whether plaintiff expended $10,000 in completing construction work covered by the contract plans and specifications,[3] (2) whether the trial justice correctly computed the amount of extras recovered by plaintiff, and (3) whether the trial justice erred by relying on Gillson's testimony.

I

In its brief, plaintiff concedes that the trial justice "was required to find that at least $10,000 in labor and materials was expended by MBT on the [restaurant] exclusive of extra work." We agree with this conclusion and observe that the trial justice could have made deductions from this award of extras either for work not completed pursuant to the contract or for the difference between $10,000 and any lesser amount that represented the total of contract expenditures. As noted previously, the trial justice found more than $10,000 was expended on contract work but also found $500 worth of contract work not completed and entered judgment accordingly.

The defendant questions the adequacy of proof offered by plaintiff on this issue. The defendant points out that much of Gillson's testimony concerned the extras and that plaintiff had made no attempt to distinguish between labor expended on extras

---

2. A second statement prepared by plaintiff on September 9, 1976, included one additional item and showed a balance due of $10,169.15.

3. Because plaintiff does not appeal from the lower court's $500 award to defendant, the amount in question may be reduced to $9,500.

and labor costs covered by the contract plans.

The question of whether or not plaintiff proved expenditures of $10,000 or more for contract items is a factual one. We shall not overturn the trial justice's finding on this issue if it is based on competent evidence, if it is not clearly wrong, and if the justice has not overlooked or misconceived material evidence. *Edward R. Marden Corp. v. S. & R. Construction Co.*, 112 R.I. 332, 336, 309 A.2d 675, 677 (1973). We acknowledge that the trial justice overlooked the fact that some labor added to the calculation of contract labor costs was attributable to the cost of extras. However, we find that the labor cost of plaintiff's employees constituted only a small portion of the total cost allowed by the trial justice for extras. In addition, we have recomputed the average hourly figure for plaintiff's employees from $7.80/hour to $3.80/hour, bringing this figure more in line with what plaintiff actually paid.[4] We shall discuss the effect this lower figure has on the computation of extras in part II of this opinion.

The trial justice found that labor costs under the contract exceeded $7,000. The actual cost, allowing for profit and fringe benefits and excluding labor for several extras when plaintiff used his own employees, was slightly in excess of $6,000. But this figure must be compared to the allowance for plumbing costs. Here the trial justice allowed $2,000—a figure reflecting slightly more than the cost of plumbing materials alone. To this amount we must add the cost of the subcontracted plumbing labor. Even deducting some plumbing items for which plaintiff may

have received credit as extras, we find that plaintiff should have received credit for total plumbing expenses of approximately $2,900. Finally, we agree with the lower court's finding that the electrical costs ran to about $1,800.[5]

These expenses alone would push the cost of work done under the original contract plans or specifications above $10,000. Furthermore, our review of the record reveals other contract expenditures that could be added to this figure, including more than $1,000 in tile work. Consequently, we find that the trial justice correctly concluded that plaintiff expended more than $10,000 in performing work called for in the contract specifications.

## II

The plaintiff and defendant agreed to a significant number of changes and additions in the contract specifications. Neither party followed the precise terms of the contract to record the agreements to modify in writing. In his decision, the trial justice implicitly found that the parties had waived these terms.

Generally, parties to a contract may modify the written terms by a subsequent oral agreement. *Industrial National Bank v. Peloso*, R.I., 397 A.2d 1312, 1314 (1979). Assuming both parties assent to a modification rising to the level of a separate agreement, the modification will not lack enforceability simply because the parties failed to employ the particular method of modification called for in the contract. *See Southern Acid & Sulphur Co. v. Childs*, 207 Ark. 1109, 1112, 184 S.W.2d 586, 588 (1945). In such a situation the parties will

---

4. The figure of $3.80 equals the average per-employee wage paid from the week ending July 16 to the week ending August 12.

5. Under the terms of the contract, Seaboard was responsible for "basic plumbing and electrical installations for the standard structural shell." The defendant has alleged in its brief that, in adding these costs to defendant's contract total, some plumbing or electrical costs may have been added that were the responsibility of Seaboard. At trial, however, Gillson testified that he had kept separate records for

defendant and Seaboard, and that the plumbing subcontractor hired to do work for defendant did not perform any work for Seaboard. From the evidence, it is also clear that plaintiff spent over $3,600 for electrical supplies and installation costs. Approximately half this amount was charged to defendant. In the absence of any contrary evidence from defendant regarding any lesser amount it contends should have been charged, we are inclined to uphold the findings of the trial justice.

be bound by the modification if the trial court finds that the parties waived their contractual rights regarding the procedure for modification.

The defendant, however, objects to the allowance of a profit factor in computing the value of the extras. It is apparent that the trial justice determined that the cost of extras would be calculated with reference to the contract cost-plus formula. Thus, 15 percent was added to the cost of labor and 10 percent to the cost of subcontracted labor and materials.

■ The parties themselves never reached any alternative agreement regarding the price or the payment schedule for the extras. Nor does it appear that the parties modified the cost-plus scheme governing the amount defendant would pay to plaintiff for the extras. It is clear, however, that the possibility of changes in the specifications necessitating increases above the $10,000 limit was provided for within the contract terms. The only portion of these terms that the parties waived concerned the section describing the manner in which the parties would bind themselves to these changes. *Cf. Michaud v. MacGregor*, 61 Minn. 198, 202–03, 63 N.W. 479, 481 (1895) (contract provision requiring written authorization for extras may be waived). Therefore, basing our determination on the conduct of the parties and the terms of the contract, we find that the trial justice did not err by assessing the cost of extras at the contract rate.

The defendant counters that plaintiff did not prove the reasonable value of the extras. In making this argument, defendant relies on *Ferris v. Mann*, 99 R.I. 630, 210 A.2d 121 (1965), and *Russolino v. A. F. Rotelli & Sons, Inc.*, 85 R.I. 160, 128 A.2d 337 (1957). Both cases are distinguishable from the present appeal.

■ In *Ferris*, an owner's entire proof of the reasonable value of contract work not completed was a memorandum that was admitted for a limited purpose, disregarded by the trial justice, and not supported by any testimony. *Ferris v. Mann*, 99 R.I. at 633–34, 210 A.2d at 123. In *Russolino*, the plaintiff "failed to furnish the slightest evidence as a basis for the extra award * * *." *Russolino v. A. F. Rotelli & Sons, Inc.*, 85 R.I. at 165, 128 A.2d at 341. Although some of plaintiff's proof of cost was disappointing, we are constrained to follow the rule of *Edward R. Marden Corp. v. S. & R. Construction Co., supra*. In the *Marden* case, we affirmed a ruling by the trial justice that the plaintiff's proffered costs of completion were prima facie evidence of the amount it was entitled to recover absent evidence from the defendant rebutting the reasonableness of these costs. *Edward R. Marden Corp. v. S. & R. Construction Co.*, 112 R.I. at 337, 309 A.2d at 677. The only rebutting evidence defendant Kelhen offered at trial was copies of two statements issued by plaintiff. One statement included a breakdown of charges tending to show that plaintiff may have inflated the cost of certain extras. The trial justice took most of these cost variations into consideration when totaling the amount recoverable by plaintiff. The defendant raised only one objection to the evidence plaintiff offered on the issue of reasonable value.[6]

Both sides have argued that the trial justice made mathematical errors in favor of the other party. As we noted in part I of this opinion, extras that involved labor by plaintiff's employees were calculated at a rate more than twice the average wage paid by plaintiff. Ultimately, however, defendant may only complain about eight hours of labor for removing a jog and sixteen hours of labor for installing brackets. Costs for materials were permitted for changes in the ceiling and installation of the oak floor, but it does not appear that any allowance was made for extra labor involved in making these additions. Similarly, the lower court made no allowance for labor costs for the extra paint and varnish work, although the court may have

---

6. This objection was made to a memorandum plaintiff offered to prove the cost of a subcontractor's charge for wall plastering. The court sustained the objection, and plaintiff later introduced a check it had drawn to pay for this work.

decided this work was includable under the contract specifications. If the $3.80/hour average is subtracted from the $7.80/hour figure allowed and this difference is then multiplied by the twenty-four hours involved, the result equals an overcharge to defendant of $96. This amount, however, can easily be offset by other computation errors.

In computing the allowance for the work of subcontractor Walsh, the trial justice omitted the 15 percent profit factor. In adding the figure for plastering work, the trial court credited plaintiff with a lower figure representing labor for a different item. With respect to two other extras (suspended ceiling and plumbing behind the bar), the court transposed numbers with a result being lower allowances for plaintiff.

The trial justice may have ignored other legitimate extras as well. We cannot say whether or not these extras were deliberately bypassed, although the trial justice did make specific findings that most of the plumbing and electrical work could not be added as extras. Nonetheless, after reviewing the record thoroughly, we hold that the trial justice committed no error in awarding plaintiff the sum of $4,617.87 for work not covered in the contract plans and specifications.

### III

Finally, defendant contends that the trial justice committed reversible error by relying on Gillson's testimony. In its brief, defendant argues that Gillson was guilty of self-impeachment on numerous occasions and thus the trial justice should have rejected his testimony. The defendant concedes that the lower court's findings are entitled to great weight and will not be disturbed unless clearly wrong.

In reviewing the record, we have encountered a number of inconsistencies in Gillson's testimony. It appears, however, that the trial justice was aware of Gillson's self-contradictions. Furthermore, our review indicates that most of the inconsistencies were the result of Gillson's own inexperience and confusion.

The trial justice went to great lengths to ascertain the actual value of expenditures made by plaintiff; he did not award plaintiff compensation for all items or amounts claimed. In our opinion, the trial justice gave Gillson's testimony appropriate consideration. We find that the lower court carefully compared Gillson's testimony with other competent evidence presented to him in arriving at a final total, and therefore we conclude that the trial justice's decision should be affirmed.

Accordingly, the judgment of the Superior Court is affirmed, and the defendant's appeal is denied and dismissed.

SHEA, J., did not participate.