**GREASE MONKEY INTERNATIONAL, INC., Plaintiff,**

**v.**

**RALCO LUBRICATION SERVICES, INC. n/k/a Ralco Services, Inc. and Robert Lieberman, Defendants.**

**No. 98CV11725–MEL.**

United States District Court, D. Massachusetts.

Oct. 9, 1998.

Harold R. Bruno, Hopper & Kanouff, P.C., Denver, CO, Jonathan M. Feigenbaum, Jeffrey J. Phillips & Associates, PC, Boston, MA, for plaintiff.

Richard M. Gilbert, Goldstein & Manello, P.C., Boston, MA, for defendants.

LASKER, District Judge.

Grease Monkey International, Inc. ("Grease Monkey") commenced this action against Robert Lieberman, individually, and its former franchisee Ralco Lubrication Services, Inc. "n/k/a Ralco Services, Inc." ("Ralco") alleging breach of contract in violation of covenant not to compete, trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition in violation of Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a). Grease Monkey moves pursuant to Fed.R.Civ.P. 65 for a preliminary injunction precluding Lieberman, Ralco, and Road Runner Lube and Go, LLC ("Road Runner")[1] from operating a fast service automotive lubrication business at the former Grease Monkey site at 1195 Fall River Avenue, Seekonk, Massachusetts. The motion is denied.

In April 1987, Robert Leiberman met John Gallivan, Vice President of Grease Monkey, in Denver, Colorado for the purpose of acquiring and opening a Grease Monkey franchise. At the meeting, Lieberman was presented with GREASE MONKEY's standard-form Franchise Agreement (the "Agreement" or "1987 Agreement"). Before signing the Agreement, Lieberman told Gallivan that he was unwilling to become personally liable as the franchisee and that he had formed Ralco Lubrication Services, Inc., of which he was the sole officer, director, and shareholder, for the purpose of it becoming the franchisee, and that he was attending the closing solely in his capacity as President and owner of Ralco. According to Lieberman's testimony, Gallivan acknowledged the situation and printed by hand the words, "D.B.A. RALCO LUBRICATION SERVICES, INC." on the first page of the Agreement on the line identifying the franchisee, which Lieberman and Gallivan initialed, and added by hand the words "RALCO LUBRICATION SERVICES, INC." on the signature page of the Agreement. Lieberman then signed the Agreement as President of Ralco.

Additionally, Lieberman signed a personal guaranty in his individual capacity. The guaranty reads: "[t]he undersigned hereby personally guarantee[s] the FRANCHISEE'S performance pursuant to the terms of this Agreement." The 1987 Agreement also contained the following post-termination non-compete provision:

The FRANCHISEE acknowledges that ... the FRANCHISEE has acquired from GREASE MONKEY confidential information regarding GREASE MONKEY's TRADEMARKS and LICENSED METHODS and that, in the event this Franchise Agreement is terminated, with its newly acquired knowledge, FRANCHISEE could injure GREASE MONKEY, not only because it is no longer a franchisee, but, in addition, because FRANCHISEE would be able to take those customers it has acquired over a period of time in the event the FRANCHISEE were to start another fast service automotive lubrication operation. FRANCHISEE, therefore, agrees that in the event this franchise is ever terminated or not renewed, for whatever reason, FRANCHISEE shall not engage in a fast service automotive lubrication business, either directly or indirectly, within a radius of 50 miles of the location of FRANCHISEE's FRANCHISED BUSINESS for a period of two years, either as an employer, employee, stockholder, limited partner, partner or in any manner.

The Agreement was amended on December 16, 1987 to designate 1195 Fall River Avenue, Seekonk, Massachusetts as the site for the franchise location ("Site Designation").

Ralco constructed and, from July 1988 to July 18, 1998, operated a Grease Monkey franchise at the Site. The facility was built according to Grease Monkey's specifications as to interior and exterior style and included the "dormer overlap roof," the design of which is a registered service mark belonging to Grease Monkey.

The Agreement expired by its terms on July 18, 1998. Two days later, on July 20, 1998, Ralco sold all of its inventory for $34,000 to Road Runner Lube and Go, LLC, ("Road Runner") a Massachusetts Limited Liability Company, the sole members of

1. Road Runner Lube & Go, LLC ("Road Runner") was not named either as a defendant in Plaintiff's original complaint or in Plaintiff's original preliminary injunction motion. Grease Monkey has since filed motions to amend its Verified Complaint to add Road Runner Lube and Go, LLC ("Road Runner") as an additional defendant and for a preliminary injunction against Road Runner. In any event, this Court may preliminarily enjoin non-parties who are "in active concert or participation" with parties so long as they are provided with actual notice. Fed.R.Civ.P. 65(d) ("Every order granting an injunction ... is binding upon the parties to the action ... and upon those persons in active concert or participation who receive actual notice of the order.").

which are Peri Ann Aptaker and Claire Aptaker, Lieberman's wife and mother-in-law, respectively. Lieberman does not have an equity interest in and is neither a member nor a managing member of Road Runner. However, Lieberman is currently employed by Road Runner as the manager of the Seekonk facility and earns a salary of $400 a week. He is also still the President and sole shareholder of Ralco, which now operates a small used automobile sales business.

On July 20, 1998, Ralco also entered into a written sublease agreement by which Ralco sub-leased the Site to Road Runner through the term ending December 31, 1999. Under the sublease agreement, Ralco retains parking space on the property to run its used automobile sales business. Furthermore, Lieberman remains personally obligated under the original lease agreement to the owner of the Site.

Since taking over the Seekonk facility, Road Runner has implemented several changes to the physical appearance of the Site. A prominent, illuminated, twenty-five foot high, black and yellow sign which reads "ROAD RUNNER LUBE & GO" was erected and a banner bearing Road Runner's logo hangs in the customer waiting area. All signs, logos, uniforms, posters, products, letterhead, operating manuals, promotional and advertising materials, and other materials with Grease Monkey's name or trademark have been removed from the Site. However, Road Runner has not renovated or removed the "dormer overlap roof," an architectural feature used at many Grease Monkey facilities.

An evidentiary hearing was held on September 11, 1998, during which Lieberman testified and the parties submitted exhibits and authorities.

■ In this Circuit, the criteria for determining whether a preliminary injunction should be issued are: (1) the likelihood that the moving party will prevail on the merits; (2) a showing that the moving party will suffer irreparable injury unless the injunction issues; (3) the balance of the equities between the parties i.e., proof that the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the granting of a preliminary injunction will not be adverse to the public interest. *Ralph v. Lucent Technologies, Inc.,* 135 F.3d 166, 167 (1st Cir.1998) (citations omitted).

### I. *Likelihood of Success*

#### A. *Breach of Contract*

■ On the present state of the record, whether Grease Monkey is likely to succeed on its underlying breach of contract claim is clouded. Grease Monkey's contract action consists of two interrelated arguments. First, it contends that the covenant not to compete applies both to Ralco, the corporation, and Lieberman, individually. Accordingly, it argues that Lieberman's management of Road Runner constitutes "engag[ing] in a fast service automotive lubrication business" in violation of the covenant. Second, it asserts that because Road Runner was created and structured to circumvent the non-competition provision in the 1987 Agreement and its only members are Lieberman's wife and mother-in-law, it is, in effect the alter ego of both Lieberman and Ralco. Lieberman counters that because he signed the Agreement only as an agent of Ralco and not in his individual capacity, with the exception of the personal guaranty, while Ralco is bound by the covenant not to compete, he is not. Lieberman also maintains that Ralco is not operating a fast lube business and is not violating the non-compete covenant contained in the Agreement.

Plaintiff's likelihood of success on the merits of its contract claim depends in large part on whether it can show that Lieberman is personally bound by the covenant not to compete. By its terms, the covenant proscribes only the post-termination conduct of the "Franchisee." It does not address the conduct of the officers, directors, or shareholders of the Franchisee. In addition, the 1987 Agreement designates Ralco as the Franchisee. Lieberman is identified only as Ralco's President. Moreover, the only amendment to the Agreement, the Site Designation, also refers to Ralco as the Franchisee and Lieberman as Ralco's President. Accordingly,

whether Lieberman is individually bound by the terms of the Agreement is uncertain on the present state of the record and, because Grease Monkey drafted the Agreement, any ambiguity must be construed against it. *See Russolino v. A.F. Rotelli & Sons, Inc.*, 85 R.I. 160, 164, 128 A.2d 337, 340 (1957) (holding ambiguity should be resolved against the party who drafted the agreement).

■ In addition, there is little in the present record that indicates that Lieberman is individually obligated to comply with the covenant not to compete by virtue of the personal guaranty. Although Lieberman personally guaranteed Ralco's performance of its obligations under the 1987 Agreement, he never entered into a separate non-compete agreement. *Cf. Jiffy Lube International, Inc. v. Weiss Bros., Inc.*, 834 F.Supp. 683, 686 (D.N.J.1993) (noting shareholders were bound because they executed an amendment whereby they "acknowledge[d] and agree[d] to be bound individually by all covenants not to compete applicable to the Franchisee"). As a result, the authorities provided by Grease Monkey in which the defendants were parties to the non-competition agreements sued upon and were operating in violation of those covenants are of limited utility upon the record as it stands. *See e.g., Economou v. Physicians Weight Loss Centers of America*, 756 F.Supp. 1024, 1026–27 (N.D.Ohio 1991) (assuming individuals were parties to covenants not to compete and discussing whether covenants were reasonable restrictions); *ATL Int'l, Inc. v. Mohammad Baradar*, Business Franchise Guide, ¶ 11,345 (D.Md.1997) (noting defendant signed contract with covenant not to compete); *McCart v. H & R Block, Inc.*, 470 N.E.2d 756 (Ind. App.1984) (holding husband was properly enjoined where wife was bound by non-compete covenant); *Tampa Bay Business Publishing Co. v. Zink*, 439 So.2d 271, 272 (Fla.App. 1983) (finding that employee upon termination of employment had entered into a non-competition agreement). *Jiffy Lube*, 834 F.Supp. at 686;

Moreover, the fact that both the non-compete and the guaranty provisions contained in Grease Monkey's current revised standard form franchise agreement would operate to prevent a current situation from occurring provides little guidance.[2] On the one hand, the 1998 version could be interpreted merely as clarifying what was intended in the 1987 Agreement. On the other hand, it is possible to infer that because the 1998 agreement specifies that a guarantor is bound by the non-compete agreement, the 1987 Agreement by implication does not.

Finally, with respect to whether or not Road Runner is the alter ego of either Lieberman or Ralco, the testimony to date has understandably been brief in view of the fact the hearing was called fairly promptly, without discovery, and the questioning with regard to the details relating to Road Runner was prompted, perhaps unexpectedly to the parties, by the Court. Here, too, plaintiff's likelihood of success depends in part on whether Lieberman is personally obligated by the non-compete covenant. However, the additional authority Grease Monkey provides in support of its alter ego theory merely suggests that a person who binds himself by a non-compete agreement cannot circumvent it by engaging in the same activity as an employee of another corporation or of a relative. It does not specifically address whether Lieberman can be found individually obligated by the covenant. *See Alexander & Alexander, Inc. v. Danahy* 21 Mass.App.Ct. 488, 488 N.E.2d 22 (Mass.App.Ct.1986) (holding that in appropriate circumstances, a preliminary injunction may extend to defendant's employer where defendant breached not compete agreement and defendant's employer was fully aware of defendant's obligations not to compete).

In sum, as the record stands, while a serious question has been raised as to whether Road Runner and its principals constitute the alter ego of either Lieberman or Ralco, it cannot be said with the requisite degree of

---

2. The scope of the non-compete provision in the 1998 Agreement is much broader than its 1987 counterpart and extends to the Franchisee's owners, officers, and directors in addition to the Franchisee. The 1998 guaranty provision would require the signatory "to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement ... [and] be bound by the restrictive covenants ... contained in the Agreement."

certainty that Grease Monkey will probably prevail. The best that can be said at this stage is that the probability of success is evenly balanced. Although it is not improbable that Plaintiff may ultimately prevail on its contract claim, as the record stands it has not met its burden.

### 1. *Lanham Act Claims*

■ Grease Monkey has failed to establish that it is likely to prevail on its trademark infringement claim. *See generally Star Financial Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir.1996) (identifying criteria for establishing service mark infringement). First, although Grease Monkey registered the "dormer overlap roof" service mark, it is questionable whether it is entitled to trademark protection because, at least at first view, it does not appear that the mark has secondary meaning. Grease Monkey has offered no evidence of any conscious connection, in the public's mind, between the "dormer overlap roof" mark and its fast lube business. Moreover, nothing in the record suggests that consumers associate the "dormer overlap roof" with a Grease Monkey franchise. *See Boston Beer Co. Ltd. v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175 (listing factors for determining whether a mark has achieved secondary significance). Second, although the "dormer overlap roof" is still intact at the Site, Road Runner is not "using" the mark. The "dormer roof" is simply a leftover architectural feature of the former Grease Monkey location. Finally, Grease Monkey has not demonstrated that consumers are likely to confuse Road Runner for a Grease Monkey franchise simply because of the "dormer overlap roof." *See Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center*, 103 F.3d 196, (1st Cir.1996) (setting out eight factor test for determining likelihood of confusion on part of consumers.). Accordingly, Grease Monkey has not established it is likely to succeed with respect to its trademark infringement action.

Likewise, Grease Monkey has failed to demonstrate defendants probably have engaged in unfair competition by using Grease Monkey's "dormer overlap roof" to falsely advertise and designate the origin of services. As discussed above, Plaintiff's claim is not likely to succeed because the "dormer overlap roof" has not been shown to have secondary meaning or that consumers are likely to confuse Road Runner with a Grease Monkey franchise on account of the "dormer overlap roof."

### B. *Irreparable Injury*

Grease Monkey has not demonstrated that it will suffer irreparable injury should preliminary relief be denied. In both *Jiffy Lube* and *Economou*, authorities relied upon by the Plaintiff, the finding of irreparable harm to the franchisor's good will was premised on a predicate finding that the covenant not to compete had been violated because the defendants were individually bound by the covenant. *See Jiffy Lube*, 834 F.Supp. at 692 (finding irreparable injury where defendant was party to restrictive covenant); *Economou*, 756 F.Supp. at 1038–39 (concluding that franchisor faced irreparable harm where covenant not to compete was probably valid and enforceable). Plaintiff's suggestion that irreparable harm exists simply because the non-competition clause in the Agreement acknowledges that harm will result from its breach is similarly misplaced. Its argument falls short because it is premised on a finding that Lieberman breached the non-competition covenant, and, as discussed above, Plaintiff has failed to make this predicate showing. Moreover, the financial or monetary injury which Plaintiff might suffer is ordinarily compensable, and is not usually considered to be irreparable. Nothing in the record indicates Plaintiff bears a significant risk of enduring non-financial harm.

### C. *Balancing the Equities.*

■ The balance of the equities tip in Defendant's favor. If Grease Monkey ultimately prevails, its alleged harm is compensable. However, Lieberman's ability to earn a living in his chosen field would be extinguished or at least substantially curtailed if he were enjoined. The equities also favor Road Runner. A preliminary injunction would cause Road Runner obvious hardship because it would shut down Road Runner's fast lube operations.

#### D. *The Public Interest*

To the extent the public is involved, its interest would be adversely affected by granting Grease Monkey's motion because consumers in the Seekonk area would be deprived of a fast service automobile lubrication service.

#### II. *Conclusion*

 For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied.

It is so ordered.