DECISION
This dispute arises from a contract to construct a single-family home at 60 America Way, Jamestown, Rhode Island, entered into by Jalex Builders, Inc. (Plaintiff) and Janet Monaghan (Defendant). Plaintiff was to construct a single-family dwelling for Defendant. Defendant was to pay Plaintiff the sum of $155,503 plus the cost of any extra work as provided in a written contract. Defendant failed to make the final payments due under the contract and Plaintiff thereafter filed this action. Defendant counterclaimed for defective workmanship.
The two basic issues presented to the Court for resolution are: 1) whether Plaintiff proved Defendant was responsible for monies owed under the contract, including extra work performed by Plaintiff, and 2) whether Defendant proved that certain work was performed in an unworkmanlike fashion thereby warranting an award of compensatory damages.
 FINDING OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO PLAINTIFF'S COMPLAINT
Prior to entering into a contract, the parties met on a couple of occasions. In addition, Plaintiff was provided with a set of plans that Defendant had obtained from an out-of-state company or architect. The testimony of Plaintiff is persuasive that these plans could not be used for the construction of a single-family dwelling in Rhode Island without modification.
After the contract was signed, Plaintiff had revisions prepared to the plans that were provided to him by Defendant. These plans, in conjunction with the plans for the truss roof systems, were submitted to the Jamestown Building Official to obtain a building permit. These plans were approved by the Building Official and used for the construction of the house. The Court found that these plans were provided to Plaintiff by Defendant. Defendant's plans were not the plans used to obtain a building permit or to construct the home.
After the building permit was obtained, construction started on the house. Prior to the actual work commencing, there was an issue with respect to the relocation of the house. Apparently, the survey provided to Plaintiff by Defendant was inaccurate and required that the house be relocated. Because of the change in the location of the house, the length of the driveway increased.
During the course of the construction, there were many changes made to the scope and extent of the work. Some of these changes were reflected in a change order. Others changes were not.
In late October or early November, the Certificate of Occupancy was obtained from the Jamestown Building Official. Pursuant to the terms of the contract, Plaintiff was to receive a payment in the amount of $27,503 at that time. Payment was not made by Defendant. Instead, Defendant made a direct payment to Arnold Lumber for $13,285.17, leaving a balance due under the base contract price of $14,217.83. In addition to this amount, Plaintiff is also seeking $24,349.25 for extra work and changes to the scope of the work.
There are many small extras that were added to the project during the course of the job. Plaintiff contends that all of these items were requested by Defendant and were not in the contract. There are also a number of larger items that were added to the project, such as the additional costs to construct the driveway, changes relating to the kitchen cabinet allowance, for the hardware floors, for the painting of the house, for the installation of underground utilities, and for the air-conditioning system.
According to the testimony of Plaintiff, it is not uncommon for verbal changes to be made during the course of any construction job. Plaintiff testified that when jobs are moving so fast, it is impractical and impossible to obtain written change orders prior to the actual completion of the work.
The Rhode Island Supreme Court in MBT Construction Corp. v. KelhenCorp., 432 A.2d 670 (R.I. 1981), addressed the question of the effect of parties to a contract failing to abide by the contractual terms requiring a written modification. In that case plaintiff was seeking additional compensation for construction work it performed that was not approved in writing by the defendant. In reviewing this issue, the Court stated in part as follows:
 "Generally, parties to a contract may modify the written terms by a subsequent oral agreement. Assuming both parties assent to a modification rising to the level of a separate agreement, the modification will not lack enforceability simply because the parties failed to employ the particular method of modification called for in the contract. In such a situation the parties will be bound by the modification if the trial court finds that the parties waived their contractual rights regarding the procedure for modification." Id. at 674-75.
After carefully considering the testimony of both parties, this Court finds that the requirement in the construction contract for written change orders were waived by the parties as evidence by their conduct and actions. In this case, the parties engaged in a course of conduct whereby extra items would be requested or additional work authorized without there being a formal written change order. Defendant testified that she never objected to the extra work being provided by Plaintiff, and, further, she never instructed Plaintiff to stop providing the extra items and extra work. Defendant also testified that for most, if not all, of these items she actually requested that they be included in the scope of the work.
It would be fundamentally unfair and inequitable to now allow Defendant to insist upon the formality of a written change order prior to Defendant being obligated to make payment for the items when the course of conduct between the parties is persuasive that the Defendant in fact either requested, agreed to, or acquiesced to such work as the project progressed.
The Court finds that Plaintiff believes that it has established, by a fair preponderance of the evidence, that it is entitled to the principal sum of $38,567.08, said sum representing the balance of $14,217.83 which Plaintiff is due under the contract as adjusted for Defendant's payment to Arnold Lumber, plus $24,349.25 which the Court has found the Plaintiff is entitled to recover for extra work to which the Defendant assented orally or knowingly acquiesced to as the work progressed. Specifically, the Court finds Plaintiff's testimony and exhibits to be credible with respect to the value of said extra work performed by Plaintiff.
 FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO DEFENDANT'S COUNTERLCIAM
Defendant filed a counterclaim against Plaintiff for breach of contract due to the house not being built in a workmanlike manner. The basis of the counterclaim was set forth by Gary Johnson of G. Johnson Builders (Johnson), who testified on Defendant's behalf as a qualified expert in the area of home construction. Johnson prepared a five-page proposal that set forth what was not built in a workmanlike manner, why it was not built accordingly, and the cost of repair. At the trial, Johnson further testified to what was defective concerning the workmanship provided in the construction of the home, why it was defective, and the costs of correction and repair.
Johnson stated that he performed two inspections of the house and then prepared the proposal itemizing numerous problems with the workmanship. The proposal further included labor and materials. Johnson testified that he had priced and performed all the work set forth in the proposal many times. As discussed below, the Court accepts such claim as it relates to certain work and rejects with respect to other work.
Front Porch. Pictures were used as evidentiary exhibits to help illustrate the defects in the workmanship. The front porch was addressed first. Johnson testified that the construction of the front porch was not built in a workmanlike manner because it lacked support and sloped. It was sinking to the point that a railing was detached. A soffit was missing and a beam was not placed to support posts. The beam is necessary for support and to prevent uplift. Johnson testified that it is how a builder would build every porch. He further testified a support beam would be required regardless of how a truss system was designed. Johnson testified that the decking, posts and soffits had to be removed to make the repairs. There would be significant rebuilding involved. Then the proper beams needed to be placed for support. Johnson testified that it would cost $15,250 to repair the porch.
Back Porch. Johnson next testified to what was defective about the workmanship of the back porch. He stated that the back porch was built the same way that the front porch had been and lacked beams. Johnson stated that wind uplift is a major factor in addition to lack of support. The porch was sinking, and the railing was coming apart. The cost to repair the back porch was $14,250.
Siding and Trim. Johnson testified that the siding was not installed properly. It was nailed too tight and had buckled He testified that some of the vinyl could be reused but that it would cost $4,590 to remove it. He also testified that it would cost $8,800 to install the vinyl siding. The reason for this cost is the aluminum trim cracks when removed. Thus, the cost to repair the vinyl siding is $13,390.
Asphalt. Johnson testified that there was only one coat of asphalt on the driveway. He testified that a driveway has a binder coat and a finished coat of asphalt. The Defendant's driveway only has a binder coat and not a finish coat. Johnson also stated that parts of the driveway had sunken and that certain sections needed to be clipped. Plaintiff indicated that the final coat had not been put on due to the falling out between him and Defendant. The costs of repairs by Defendant's offered proof would be $2,400.
Kitchen Countertops and Kitchen Cabinets. Johnson testified that the kitchen countertop had a hole or chips in it the size of a quarter. It was made by a screw. Also, when the cabinets were installed, oak flooring was not used underneath the cabinets and the cabinets are 3/4 of an inch shorter and do not look right with the stove installed. Johnson stated that this was important because the stove and dishwasher could not be removed if the items needed repair. He then explained that the extent of work required to make repairs would involve removing the countertop, taking out the cabinets, placing the 3/4 inch plywood in with a new countertop without the hole. The cost would be $3,200.
Back Bedroom Roof. Johnson next testified that the back peak of the roof was not built per plan. Soffits were left out where the back bedroom roof meets the back porch. It is not symmetrical and the siding needs to be extended. He testified that he would need to strip back the roof and extend the soffit, take the trim off, take off the corner boards and extend them and patch the roof back in. Also, part of the siding would need to be removed. The cost would be $1,800 to correct this workmanship.
Kohler Toilet. Johnson testified that the toilet installed was not the designer model specified in the contract. This would require taking out tile to replace and install. He also testified that the toilet could have been spaced better for more room when it was installed. The cost to replace and install the toilet would be $650. (Defendant's Exhibit A.)
Faucets. Johnson next testified that the faucets that were installed were not the faucets specified in the contract. The faucets are also 3/4 inch shorter because of the 3/4 plywood missing underneath the countertop. He believed that brass designer faucets were to have been installed. The cost to replace the faucets would be $575.
Wood Casing. Johnson testified that the palladium bedroom window was to have wooden casing. The workmanship was defective because rubber was used instead of wood. He testified that wood looks better than rubber and is better quality. The cost to install the wood casing would be $395.
Bulkhead. Johnson testified that the bulkhead had been leaking for a while and that it was stained. The repair would take about one-half day and a backhoe would be required. The cost of repair would be $600.
Duct Dryer. Johnson testified that the duct dryer was not run out of the proper duct. He stated that there was a big hole with a big patch that ducted into the basement. It would cost $370 including labor and materials to properly run the duct out the back of the house.
Add 2x4 for shearing next to I-Beams. Johnson testified that typically a 2x4 needs to be installed next to and underneath the beam when a joist is used for the bearing wall. With the way it is installed, the plywood could shear. It would cost $675 to install the 130 feet of beam.
Front Door. Johnson next testified that the front door installed in the home was not the "Peach Tree" brand called for in the contract. It would cost $1,500 to take out the door that was installed and replace it.
Repaint Bottom of Doors and Baseboards. Johnson testified that when polyurethane was applied to the doors, it got on the baseboard and doors. It would cost $475 to correct it by sanding, priming and painting.
Dormers. Johnson testified that the two front dormers on the roof do not have the proper pitch as called for by the plans. There is no overhand or pigeon stoops on the house. It will cost $3,200 to remove and put a steeper pitch on the dormers.
The Court finds Johnson's testimony with respect to the above corrective work required and the associated costs to be credible and feasible. The Court specifically rejects Plaintiff's assertion as it relates to each such item of work.
The award for unworkmanlike performance totals $58,730.
The Court rejects the Defendant's claim for unworkmanlike performance as it relates to the following claims:
Gable Eaves. The Court rejects Defendant's claim with respect to the eaves. As previously stated, the Court finds that Defendant agreed to the final plans used by Plaintiff which did not include the eaves for which she seeks compensation. Moreover, the record evidence does not suggest any dispute with respect to eaves as ensued until such time as this litigation commenced.
Oak Flooring. The Court rejects Defendant's claim for deficiencies in the oak flooring. The record is abundantly clear that the Defendant consented to the width of the oak flooring and that said flooring is satisfactory to her.
Heating System. This claim is also rejected. Plaintiff's testimony is persuasive that the system installed was installed correctly with subsequent balancing work. Furthermore, Plaintiff's testimony is credible that Defendant was aware of the change in the heating system and did not object to it.
Bonus Room. No award is made in this area since Plaintiff constructed the bonus room according to the final plan to which, as previously noted, Defendant agreed.
 CONCLUSION
In summary, the Court finds that Plaintiff is entitled to recover for work performed under the contract, including extras, in the amount of $38,567.08. The Court also finds that certain of the work to be performed by Plaintiff was done in an unworkmanlike manner and that the damages arising from such unworkmanlike performance totaled $58,730.
In that Defendant has received an award for unworkmanlike performance that exceeds Plaintiff's award for breach of contract, the Court declines to make an award to Plaintiff for attorney's fees and interest under the contract.
Adjusting Defendant's recovery in the Counterclaim by the sum due to Plaintiff on its complaint, judgment will enter for Defendant in the amount of $20,162.92 plus prejudgment interest.
Each party is awarded its/her costs and an appropriate adjustment to Defendant's recovery will be made accordingly.